UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JIE ZHANG a/k/a JIMMY ZHANG, RU HAO
LIU a/k/a JASON LIU, XIU QIN LIN, HSIA
SHENG CHENG and CHEIN WEN HSIEH
a/k/a KEVIN HSIEH, on behalf of themselves
and others similarly situated,

                                Plaintiffs,

     -against-

WEN MEI, INC. d/b/a HUNAN DYNASTY,
HUNAN DYNASTY AT LEVITTOWN, INC.
d/b/a HUNAN DYNASTY, FENNY JAPANESE
AND CHINESE RESTAURANT INC. d/b/a
HUNAN DYNASTY, CHEN'S CHINESE
RESTAURANT, INC. d/b/a HUNAN
DYNASTY, XIANG RONG CHEN a/k/a Kevin
Chen, BAIFENG CHEN a/k/a Andy Chen, CAI
FEN CHEN, CINDY CHEN, and LUQI XIE,

                             Defendants.

------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
14-CV-1647 (JS)(SIL)

**LOCKE, Magistrate Judge:**

      Presently before the Court in this wage and hour litigation, on referral from

the Honorable Joanna Seybert for Report and Recommendation, are Plaintiffs' Jie

Zhang a/k/a Jimmy Zhang ("Zhang"), Ru Hao Liu a/k/a Jason Liu ("Liu"), Xiu Qin Lin

("Lin"), Hsia Sheng Cheng ("Cheng"), and Chein Wen Hsieh a/k/a Kevin Hsieh

("Hsieh") (collectively "Plaintiffs") motion to certify their New York Labor Law claims

as a class action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23,

*see* Docket Entry ("DE") [198], and Defendants' Wen Mei, Inc. d/b/a Hunan Dynasty

("Wen Mei"), Hunan Dynasty at Levittown, Inc. d/b/a Hunan Dynasty ("Hunan

Dynasty"), Chen's Chinese Restaurant ("Chen's"), Xiang Rong Chen a/k/a Kevin Chen

("Kevin Chen"), and Cindy Chen (together the "Moving Defendants") motion to dismiss the Third Amended Complaint ("TAC") pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6) and 25(a)(1).[1] *See* DE [199].  By way of Complaint filed on March 12, 2014 and amended on May 12, 2015 and December 22, 2016, Plaintiffs, on behalf of themselves and others similarly situated, commenced this action alleging minimum wage, spread of hour, overtime, and wage notice violations pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law, N.Y. Lab. Law § 650 *et seq.* ("NYLL") against Defendants.  *See* TAC, DE [173]; *see also* Complaint ("Compl."), DE [1]; Second Amended Complaint ("SAC"), DE [56].

On March 20, 2017, Plaintiffs filed their motion to certify their NYLL claims as a class action pursuant to Fed. R. Civ. P. 23.  *See* DE [198].  A day later, the Moving Defendants filed their motion to dismiss pursuant to: (1) Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; (2) Fed. R. Civ. P. 12(b)(6) for failure to state a claim; and (3) Fed. R. Civ. P. 25(a)(1) for failure to timely substitute deceased Plaintiff Zhang's claims.  *See* DE [199].  On October 12, 2017, Judge Seybert referred these motions to this Court for a Report and Recommendation as to whether they should be granted.  *See* DE [210].

For the reasons set forth herein, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part and that Plaintiffs' motion to certify be granted as modified.  Specifically, the Court recommends that the portion

---

[1] Defendants Cai Fen Chen, Luqi Xie, and Fenny Japanese and Chinese Restaurant Inc. d/b/a Hunan Dynasty ("Fenny") have not submitted any papers in opposition to Plaintiffs' motion to certify or in support of Defendants' motion to dismiss.

of Defendants' motion seeking dismissal pursuant to Rules 12(b)(1) and 12(b)(6) be denied, but the portion seeking dismissal of Plaintiff Zhang's claims pursuant to Rule 25(a)(1) be granted and that he be removed from the caption as a Plaintiff in this case. The Court also recommends that Plaintiffs' motion for class certification be denied as to the proposed class definition, but granted as to the modified class definition discussed herein.  Further, the Court recommends that Plaintiffs Liu, Lin, and Hseih be appointed as class representatives and that Troy Law, PLLC be appointed class counsel.  Finally, in the event that this Report and Recommendation is adopted, the Court recommends that Plaintiffs be granted leave to file a motion for approval of a proposed class notice, which *inter alia*, addresses the production of employee contact information, scheduling of the publication and distribution of the proposed notice, and a proposed opt-out deadline for putative class members.

## I.    RELEVANT FACTUAL BACKGROUND

The following facts are taken from the TAC and the attached exhibits and related motion papers as cited herein.

Plaintiffs complain that various corporate entities and individuals, purportedly operating as a joint enterprise doing business as Hunan Dynasty, have committed assorted wage, overtime, spread of hour, and wage notice violations under the FLSA and NYLL.  *See generally* TAC.  Specifically, Plaintiffs, who were employed by Defendants, claim that Defendants, operating under a common policy and practice, willfully failed to pay the minimum wage required for all hours worked, overtime compensation, and a spread of hours premium, and failed to provide employees with

required written notices concerning the terms and conditions of their employment. *Id.* ¶¶ 61-66.  The TAC also alleges that Defendants willfully failed to keep records as required by the FLSA.  *Id.* ¶ 51.

Hunan Dynasty is a restaurant located at 2993 Hempstead Turnpike in Levittown, New York (the "Levittown Restaurant").  Plaintiffs worked at the Levittown Restaurant as waiters and "non-tipped packers," and their collective employment spanned from May 2006 through May 2013.  *Id.* ¶¶ 5-15, 42-49. Plaintiffs Lin, Cheng, and Hsieh worked as waiters, and Zhang worked as both a waiter and a temporary replacement waiter.  *Id.* ¶¶ 42-49.  Plaintiff Liu worked as both a waiter and a non-tipped packer assistant.  *See id.*  Plaintiffs' alleged periods of employment are as follows:

| PLAINTIFF | EMPLOYMENT PERIOD(S) | TAC ¶ |
|---|---|---|
| Zhang | May 2006 - May 2009;<br>Feb. 1, 2011 - March 5, 2011;<br>Oct. 3, 2012 - Apr. 15, 2013 | 41-42 |
| Liu | Oct. 2006 - Feb. 2007;<br>Apr. 2007 - Oct. 2008;<br>Oct. 2012 - Nov. 2012<br>March 29, 2013 - May 5, 2013 | 43-45 |
| Lin | Aug. 1, 2008 - Sept. 21, 2012 | ¶ 46 |
| Cheng | Jan. 1, 2007 - Dec. 31, 2012 | ¶ 48 |
| Hsieh | Apr. 1, 2012 - Apr. 15, 2012 | ¶ 49 |

According to Plaintiffs, Defendant Hunan Dynasty, a corporate entity, operated the Levittown Restaurant from October 1, 2003 until August 15, 2012, at which time Defendant Wen Mei was incorporated and allegedly overtook operation of

4

the venue.  *Id.* ¶¶ 5-6.  On March 12, 2014, immediately after the commencement of the instant action, Defendants purportedly "began a concerted effort to [intentionally and fraudulently] transfer, assign, or encumber interests in [the Levittown Restaurant] and its assets [from Wen Mei]" to Defendant Fenny Japanese and Chinese Restaurant ("Fenny") for the below market value of thirty thousand dollars. *Id.* ¶¶ 9-10.  To that end, Fenny was incorporated on May 30, 2014 and purportedly assumed ownership and control of the Levittown Restaurant sometime thereafter.[2] *See id.* ¶ 11.

On October 1, 2014, Chen's, which was previously incorporated on December 13, 2013, opened a restaurant also named Hunan Dynasty at 2292 Hempstead Turnpike, East Meadow, NY 11554 (the "East Meadow Restaurant").  On the day before the opening of the East Meadow Restaurant, Defendant Kevin Chen purportedly "began assigning" workers from the Levittown Restaurant to work at the East Meadow Restaurant, and, throughout their co-existence, the two locations, and their respective corporate entities, "frequently transport[ed] goods, materials and equipment" between each other.  *Id.* ¶¶ 23, 25.  Further, when the Levittown Restaurant closed in 2015, all of Chen's employees were "ordered" by Kevin Chen to "transport all remaining restaurant goods, including foodstuffs and equipment" to the

---

[2] The TAC is silent as to the date that Fenny allegedly assumed ownership and control of the Levittown Restaurant.

East Meadow Restaurant, and certain employees were transferred as well.[3] *Id.* ¶¶ 26-27.

As a result of the above, Plaintiffs claim that Chen's, Fenny, and Wen Mei "are a single and joint employer [with . . . ] a high degree of interrelated and unified operations, shar[ing] common management, centralized control of labor relations, common ownership, common control, common business purpose, and interrelated business goals." *Id.* ¶ 24. Plaintiffs also allege that Hunan Dynasty, Wen Mei, and Fenny are considered the same employer under New York law, as they collectively employ "the same waiters, deliverymen, and kitchen staff with substantially the same work shifts and pay conditions." *Id.* ¶ 21. The TAC outlines the following relationships between the corporate entities:

| ENTITY | ADDRESS | RELEVANT YEARS | THEORY OF LIABILITY |
|---|---|---|---|
| Hunan Dynasty | 2993 Hempstead Turnpike, Levittown, NY 11756 | Operated restaurant 10/1/03-8/15/12 | Employer |
| Wen Mei | 2993 Hempstead Turnpike, Levittown, NY 11756 | Incorporated 3/6/12 | Successor employer |
| Fenny | 2993 Hempstead Turnpike, Levittown, NY 11756 | Incorporated 5/30/14 | Successor employer; Joint employer with Chen's |
| Chen's | 2292 Hempstead Turnpike, East Meadow, NY 11554 | Incorporated 12/13/13 | Successor employer; Joint employer with Fenny |

---

[3] Plaintiffs also allege that, in October 2015, Defendants transferred, assigned, and encumbered their interests in the Levittown Restaurant to non-party Xue Hua Hsu, who subsequently began doing business as Shanghai Gourmet at that same location. *See* TAC ¶ 45.

The TAC further alleges that Kevin Chen controls the various businesses, either individually or by sharing common control with the other individual Defendants. *See id.* ¶ 29. Specifically, Kevin Chen allegedly "serves as owner, operator, manager, principal and/or agent of the Defendant Corporations and through these corporate entities, operates the restaurant[s] as joint or unified enterprises." *Id.* Cai Fen Chen, Kevin Chen's wife, allegedly serves as "owner, operator, principal and/or agent" of Fenny, *see id.* ¶ 30, and Cindy Chen, Kevin Chen's sister, is the "president, cashier, manager, principal and/or agent of Wen Mei." *See id.* ¶ 31. Andy Chen, Kevin Chen's son, serves as "president, CEO, owner, operator, manager, principal and/or agent" of Chen's, *see id.* ¶ 34, and Luqi Xie, Andy Chen's girlfriend, serves as "owner, operator, manager, principal and/or agent" of Chen's. *See id.* ¶ 33. The TAC sets forth the following relationships between the individual Defendants as follows:

| NAME | CORPORATE AFFILIATION | PERSONAL RELATIONSHIP |
| --- | --- | --- |
| Kevin Chen | Owner/operator/manager/principal/agent of "Defendant Corporations" | Husband of Cai Fen Chen; Brother of Cindy Chen; Father of Andy Chen |
| Cai Fen Chen | Owner/operator/manager/principal/agent of Fenny | Wife of Kevin Chen |
| Cindy Chen | President/cashier/manager/principal/agent of Wen Mei | Sister of Kevin Chen |
| Luqi Xie | Owner/operator/manager/principal/agent of Fenny and Chen's | Girlfriend of Andy Chen |
| Andy Chen | CEO/owner/operator/manager/principal/agent of Chen's | Son of Kevin Chen |

As a result of the above, Plaintiffs allege that Defendants together have committed violations as to: (1) overtime compensation under the FLSA and NYLL; (2) spread of

hour premium under the NYLL; (3) payment of the minimum wage under the FLSA and NYLL; and (4) wage notice requirements pursuant to the NYLL.  *See* TAC.

## II.    PROCEDURAL HISTORY

By way of Complaint filed March 12, 2014, Plaintiffs originally brought suit against Hunan Dynasty and Wen Mei, two corporate entities doing business under the name "Hunan Dynasty" at the Levittown Restaurant, and Kevin Chen, the "owner, operator, manager, principal and/or agent" of the corporate entities. *Id.* ¶¶ 5-6.  On March 10, 2015, Plaintiffs moved for conditional certification as a collective action pursuant to the FLSA for their claims alleging failure to pay minimum wage and overtime compensation.  *See* Motion to Certify FLSA Collective Action ("FLSA Motion to Certify"), DE [24].

While the FLSA Motion to Certify was pending, Plaintiffs moved for leave to amend the Complaint to add three additional defendants.  *See* Plaintiffs' Letter Motion to Seek Leave of Court to Amend Complaint and Add Defendants ("Motion for Second Amended Complaint"), DE [41]; Plaintiffs' Letter Motion to Seek Leave of Court to Amend Complaint and Add Defendants ("Supp. Motion for Second Amended Complaint"), DE [50].  Specifically, Plaintiffs sought to add individual Cai Fen Chen and corporate entity Fenny, claiming that Hunan Dynasty has an "active on-premises liquor license under the principal 'Cai Fen Chen' and operating premises name as 'Fenny Japanese and Chinese Restaurant, Inc.'"  *See* Motion for Second Amended Complaint at 1-2.  They also sought to add Cindy Chen, the alleged principal of Wen Mei, arguing that they discovered documents suggesting that "transfers were done to

protect Defendants' interest in keeping a restaurant in that location and to avoid any potential lawsuits or liabilities." *See* Supp. Motion for Second Amended Complaint at 1-2. On May 12, 2015, Judge Seybert granted the motions, allowing Plaintiffs leave to amend, and later that same day, the SAC was filed. *See* DE [55].

Following the filing of the SAC, Plaintiffs' FLSA Motion to Certify was granted. *See* Amended Memorandum and Order ("Am. Mem. and Order"), DE [102].   In granting the motion, the Court found that although a minimum wage claim was not plead "as a separate count, the factual allegations in the SAC and the declarations [submitted in connection with the FLSA Motion to Certify] 'were sufficient to place Defendants on notice of their claims related to their alleged failure to pay the minimum wage under the FLSA'" in addition to the overtime claims expressly set forth. *Id.* at 5, n.4 (quoting *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 487 (S.D.N.Y. 2009)). The Court further approved the Notice of Pendency and Consent to Join Lawsuit ("Notice of Pendency") proposed by Plaintiffs. *Id.* at 12-13. As approved, the Notice of Pendency applies to all current and former employees of Hunan Dynasty, Wen Mei, Fenny, "and/or any other entities affiliated with or controlled by any one or more of the foregoing businesses" and any "restaurant workers" at Hunan Dynasty from March 25, 2012 through the present. *See* Notice of Pendency, DE [97-1]. It also explains that "the lawsuit seeks the payment of overtime wages pursuant to the Fair Labor Standards Act" and that "[y]ou may be owed payment if you worked for HUNAN DYNASTY and were not paid at least the minimum wage for all hours worked . . . [or] if you worked for HUNAN DYNASTY

more than forty (40) hours per week and you were not paid overtime . . . . ” *Id.* at 1-2.  Thirty-six executed consents to join the lawsuit have been filed.  *See* DE [106-121, 125-129, 134-146, 172, 181].

On March 31, 2016, Plaintiffs filed a letter motion seeking leave to amend the SAC to add an explicit minimum wage claim.  *See* Letter Motion to Amend the Second Amended Complaint, DE [149].  On May 17, 2016, Judge Seybert referred that motion to this Court to issue a decision pursuant to Fed. R. Civ. P. 72(a).  *See* DE [152].  On November 9, 2016, Plaintiffs filed a supplemental letter motion seeking leave to add the following defendants to the action:  (1) Chen's, a corporate entity doing business at 2292 Hempstead Turnpike, East Meadow, NY 11554, which allegedly acted as a "joint employer" with Fenny; (2) Andy Chen, an alleged "owner, operator, manager, principal and/or agent" of Chen's and son of Kevin Chen; and (3) Luqi Xie, an "owner, operator, manager, principal and/or agent" of Fenny and Chen's, and girlfriend of Andy Chen.  *See* Supplemental Letter Motion to Amend the Second Amended Complaint, DE [164].  On December 21, 2016, the Court granted Plaintiffs' motions for leave to amend finding, *inter alia*, that the proposed TAC successfully alleges:  (1) potential successor liability as to Chen's; (2) individual liability as to Andy Chen and Xie; and (3) a timely minimum wage claim under the FLSA and NYLL.  *See* Memorandum and Order dated December 21, 2016, DE [172].  One day later, Plaintiffs filed the TAC.  *See* DE [173].

On March 20, 2017, Plaintiffs filed their motion to certify their New York Labor Law claims as a class action pursuant to Fed. R. Civ. P. 23.  *See* DE [198].  A day

later, Defendants filed their motion to dismiss pursuant to: (1) Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; (2) Fed. R. Civ. P. 12(b)(6) for failure to state a claim; and (3) Fed. R. Civ. P. 25(a)(1) for failure to timely substitute as to deceased Plaintiff Zhang's claims. *See* DE [199]. Defendants Fenny, Cai Fen Chen, and Luqi Xie have filed no opposition to any of the motions, and on April 10, 2017, interposed an Answer to the TAC. *See* DE [200]. On October 12, 2017, Judge Seybert referred these motions to this Court for a Report and Recommendation as to whether they should be granted. *See* DE [210].

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 133 S. Ct. 1523, 1528 (2013)). In the absence of a case or controversy, Fed. R. Civ. P. 12(b)(1) "provides that a party may move to dismiss a case for lack of subject matter jurisdiction." *Amityville Mobile Home Civic Ass'n*, 2015 WL 1412655, at *3; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). The Second Circuit has held that, "[t]he hallmark of a case or controversy is the presence of adverse interests between parties

11

who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975). Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)); *see also City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 340 (E.D.N.Y. 2008) ("As standing is 'a limitation on the authority of a federal court to exercise jurisdiction,' it is properly addressed within the context of a Rule 12(b)(1) motion.") (quoting *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001). However, "[w]here subject matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see also Pyramid Crossgates Co.*, 436 F.3d at 88 n.8 ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56."). The party advocating jurisdiction bears the burden of establishing its existence by a preponderance of the evidence. *See In re Jesup & Lamont, Inc.*, No. 12-1169, 2012 WL 3822135, at *2 (S.D.N.Y. Sept. 4, 2012).

B. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the

facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.").

C. Rule 23

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557 (1979)) (internal quotation marks omitted). "To establish that the exception is applicable to a given case, 'a party seeking to maintain a class action must affirmatively demonstrate compliance with Rule 23.'" *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *11 (E.D.N.Y. Sept. 16, 2014) (quoting *Comcast*, 569 U.S. at 34, 133 S. Ct. at 1432) (internal quotation marks omitted). Further, "[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Class certification pursuant to Rule 23 requires a two-step analysis. First, "the court must be persuaded, 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 82 (S.D.N.Y. 2007) (quoting *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). These prerequisites are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

14

of the class; and (4) the representative parties will fairly
and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see, e.g., Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010);

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196,

202 (2d Cir. 2008). "Once a court has concluded that Rule 23(a)'s four requirements

have been satisfied, it must then proceed to the second step*, i.e.*, determine 'whether

the class is maintainable pursuant to one of the subsections of Rule 23(b).'" *Perez*,

2014 WL 4635745, at *13 (quoting *Vivendi*, 242 F.R.D. at 83); *see also Comcast*, 569

U.S. at 34, 133 S. Ct. at 1432 (noting that, in addition to satisfying Rule 23(a)'s

requirements, a party "must also satisfy through evidentiary proof at least one of the

provisions of Rule 23(b)"). "Rule 23(b) addresses the types of relief available, as well

as the rights of absent class members." *Perez*, 2014 WL 4635745, at *13 (citing Fed.

R. Civ. P. 23(b)).

Here, Plaintiffs seek certification pursuant to Rule 23(b)(3). A party seeking

certification of a Rule 23(b)(3) class must also separately establish that: (1) "questions

of law or fact common to class members predominate over any questions affecting

only individual members," and (2) "a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3).

D. Rule 25(a)(1)

Federal Rule of Civil Procedure 25(a)(1) provides that "if a party dies and the

claim is not extinguished, the court may order substitution of the proper party," and

if a "motion for substitution is not made within 90 days after service of a statement

noting the death [of the party], the action by or against the decedent must be dismissed." *See Okolie v. Paikoff*, 589 F.Supp.2d 204, 207 n. 2 (E.D.N.Y. 2008) (dismissing claims with prejudice where no motion for substitution was made within the 90–day period prescribed by Rule 25(a)(1)); *see also Strope v. Astrue*, No. 08-CV-6136, 2009 WL 1924935, at *1 (W.D.N.Y. July 1, 2009) (dismissing an action with prejudice where no motion for substitution was made within Rule 25(a)(1) period).

## IV.   DISCUSSION

Applying the standards set forth above, and for the reasons discussed below, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part and that Plaintiffs' motion to certify be granted. Specifically, the Court recommends that the portion of Defendants' motion seeking dismissal pursuant to Rules 12(b)(1) and 12(b)(6) be denied, but the portion seeking dismissal of Plaintiff Zhang's claims pursuant to Rule 25(a)(1) be granted and that he be removed from the caption as a Plaintiff in this case. The Court also recommends that Plaintiffs' motion for class certification be denied as to the proposed class definition, but granted as to the modified class definition discussed herein. Further, the Court recommends that Plaintiffs Liu, Lin, and Hseih be appointed as class representatives and that Troy Law, PLLC be appointed class counsel. Finally, in the event that this Report and Recommendation is adopted, the Court recommends that Plaintiffs be granted leave to file a motion for approval of a proposed class notice, which *inter alia*, addresses the production of employee contact information, scheduling of the publication and

16

distribution of the proposed notice, and a proposed opt-out deadline for putative class members.

As a preliminary matter, the Court addresses whether this Court's December 21, 2016 Order granting Plaintiffs leave to amend their Complaint and adding, *inter alia*, Defendants Chen's and Andy Chen and the FLSA and NYLL minimum wage claims to this action should bar the instant motion to dismiss under the law of the case doctrine. The law of the case doctrine provides that "when a court has ruled on an issue that decision should generally be adhered to by that court in subsequent stages in the same case." *U.S. v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (quoting *U.S. v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)) (citations and internal quotation marks omitted). "Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Sagendorf–Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996); *see also Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 165 n. 5 (2d Cir. 2000). However, this discretion is limited, as the doctrine "may be properly invoked only if the parties had a full and fair opportunity to litigate the initial determination." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002).

Here, counsel for the Moving Defendants previously opposed the addition of Chen's and Andy Chen to this action, as well as Plaintiffs' minimum wage claims, making arguments identical to the instant motion. *See* Defendants' Opposition to Plaintiffs' Letter Motion for Leave to File a Third Amended Complaint Adding New

17

Claims and a New Defendant ("Motion to Amend Opp."), DE [150], at 3 ("[T]he named plaintiffs do not have standing to assert their own claims against Chen's and are not similarly situated to employees of Chen's because they never worked for Chen's and they never worked for Fenny."); *see also* Defendants' Opposition to Plaintiffs' Letter Motion for Leave to File a Third Amended Complaint Adding The Individual Defendant Luqi Xie ("Supp. Motion to Amend Opp."), DE [168], at 2 ("[T]he allegation in paragraph 30 of the proposed Third Amended Complaint that Baifeng Chen exercises sufficient controls of the restaurant's day-to-day operations to be considered an employer" fails to satisfy the test.").   However, the Court finds that the prior submissions did not constitute a full and fair opportunity to litigate the matter as to Chen's and Andy Chen as, at the time, they were not parties to the action.[4] *See* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2d ed. 2015) ("[A] party joined in an action after a ruling has been made should be free to reargue the matter without the constraints of law-of-the-case analysis.").   Therefore, the arguments set forth in the motion to dismiss are not barred as to Chen's and Andy Chen pursuant to the law of the case doctrine and the Court proceeds to address the merits of the Moving Defendants' motion to dismiss.

A. <u>Motion to Dismiss</u>

---

[4] The Court notes that the Moving Defendants do not have standing to move on behalf of other Defendants to this action. *See Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 455 (E.D.N.Y. 2009) (citing *Ashcroft v. Dep't of Corr.*, 2007 WL 1989265, at *8–9, 2007 WL 1989265, at *8 (W.D.N.Y. July 6, 2007)); *see also Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, No. 14-CV-09494, 2015 WL 7769688, at *3 (S.D.N.Y. Dec. 1, 2015), *reconsideration denied*, No. 14-CV-09494(CM), 2015 WL 9480080 (S.D.N.Y. Dec. 22, 2015) ("The general rule is that parties "do not have standing to move on behalf of other defendants."). However, as the Court recommends the denial of the portion of Moving Defendants' motion to dismiss made pursuant to Rule 12(b)(6), this point is academic.

The Moving Defendants assert that the TAC should be dismissed pursuant to: (1) Rule 12(b)(1) for lack of subject matter jurisdiction; (2) Rule 12(b)(6) for failure to state a claim; and (3) Rule 25(a)(1) as to Plaintiff Zhang's claims.   The Court notes that the Moving Defendants annex an affidavit from Andy Chen to the instant motion.   *See* Affidavit of Andy Chen, DE [199-2].   While the Court considers the affidavit for the purposes of the Moving Defendants' Rule 12(b)(1) argument, *see Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) ("In a Rule 12(b)(1) motion, the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question."), the Court finds that this affidavit does not fall within the recognized categories of documents that are appropriate to consider on a Rule 12(b)(6) motion, and declines to consider it for this purpose.   *See Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, 12-CV-2285, 2014 U.S. Dist. LEXIS 157806, at *34, 2014 WL 5822628 (E.D.N.Y. Nov. 6, 2014) (declining to consider affidavits attached to a brief submitted in opposition to motion to dismiss, noting that consideration of such affidavits would require credibility assessments and weighing of evidence which is inappropriate under Rule 12(b)(6)).   The Court addresses the Moving Defendants' Rule 12(b)(1), (b)(6) and 25(a)(1) arguments in turn.

### 1.   *Rule 12(b)(1): Lack of Subject Matter Jurisdiction*

The Moving Defendants argue for dismissal for a lack of subject matter jurisdiction on the basis that the TAC fails to adequately allege successor liability as

to Chen's and fails to allege individual liability as to Andy Chen. *See* Defendants

Memorandum of Law, DE [199-1], at 2-6. The Court disagrees.

### a. *Successor Liability: Chen's*

Although a company is not typically liable for the actions of its predecessor,

Courts in this Circuit "have employed two tests to determine if liability should be

imposed on a successor . . . ." *Chen v. DG&S NY, Inc.*, No. 14-CV-03435, 2016 WL

5678543, at *4 (E.D.N.Y. Sept. 29, 2016). Under the traditional test, successor

liability "will attach where: (1) a successor expressly or impliedly assumed the

predecessor's liabilities; (2) there was a consolidation or 'de facto merger' of

predecessor and successor; (3) the successor corporation was a mere continuation of

its predecessor; or (4) the transaction between successor and predecessor was entered

into fraudulently to escape obligations." *Id.* (citing *N.Y. v. Nat'l Serv. Indus., Inc.*,

460 F.3d 201, 209 (2d Cir. 2006)). Under the second test, substantial continuity,

courts "focus[] on whether the new company has 'acquired substantial assets of its

predecessor and continued, without interruption or substantial change, the

predecessor's business operations.'" *Id.* (quoting *Bautista v. Beyond Thai Kitchen,*

*Inc.*, No. 14-CV-4335, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015)).

Here, Plaintiffs allege facts concerning successor liability sufficient to pass

either test. Although it may be true that no named employee directly worked for

Chen's, *compare* TAC ¶ 45 (last date of employment of a named Plaintiff May 5, 2013),

*with id.* ¶ 23 (Chen's began using employees on September 29, 2014), Plaintiffs

contend that Chen's is liable as a successor of Fenny and Wen Mei. *See id.* ¶ 24.

Specifically, liability is appropriate because the TAC alleges that Wen Mei, Fenny, and Chen's are a single and joint employer and "ha[ve] a high degree of interrelated and unified operations, share common management, centralized control of labor relations, common ownership, common control, common business purpose, and interrelated goals." *See id.* To that end, as part of a single enterprise, Plaintiffs claim that in October 2014, Kevin Chen opened the East Meadow Restaurant at 2292 Hempstead Turnpike. *See id.* ¶ 22. On the day before the opening of the East Meadow Restaurant, Kevin Chen "began assigning" workers from Fenny to work for Chen's, and, throughout their co-existence, restaurant goods, materials and equipment were frequently transported between the two locations. *Id.* ¶¶ 23, 25. Further, Plaintiffs claim that when Fenny closed in 2015, all of Chen's employees were "ordered" by Kevin Chen to "transport all remaining restaurant goods, including foodstuffs and equipment" to the East Meadow Restaurant, and certain employees were transferred as well. *Id.* at ¶¶ 26-27. At this stage of the litigation, these allegations are sufficient under either test to establish successor liability, as they support the conclusion that Chen's continued the business of Fenny, including utilizing the same workers, and that Chen's acquired the assets, *i.e.*, equipment, of Fenny. *See, e.g.*, *Alvarez v. 40 Mulberry Rest., Inc.*, No. 11-CV-9107, 2012 WL 4639154, at *6 (S.D.N.Y. Oct. 3, 2012) (finding a question of fact as to whether a restaurant is subject to successor liability where it shared the same equipment and personnel of its predecessor).

As Plaintiffs sufficiently allege successor liability as to Chen's, the Court further notes that the fact that the named Plaintiffs did not work for Fenny is of no consequence.  In the TAC, Plaintiffs assert that Fenny is liable as a successor employer of Wen Mei and Hunan Dynasty, claiming that after the commencement of this action, Defendants transferred all interest in the Levittown Restaurant from Wen Mei to Fenny.  *See* TAC ¶ 10.  Thereafter, Fenny operated the Levittown Restaurant, shared the same employees, and perpetuated the same working conditions of Wen Mei.  *Id.* at ¶¶ 11, 13, 20-21.  *See Chen*, 2016 WL 5678543, at *5 (finding a question of fact as to successor liability where the alleged predecessor and successor shared the same location, utilized the same employees, offered the same food, and had the same manager).  Accordingly, that no named Plaintiff worked at Fenny or Chen's does not entitle Defendants to dismissal, as the Plaintiffs successfully plead potential successor liability.

The Moving Defendants' argument that the TAC fails to explicitly allege successor liability and relies solely on allegations of direct liability is similarly unavailing.  *See* Defendants' Memorandum in Support of their Motion to Dismiss ("Defs. Mem. in Supp."), DE [199-1], at 5.  Plaintiffs do not need to explicitly use the words "successor liability" for the pleading to adequately allege such a claim. *See Kuhns Bros. v. Fushi Int'l, Inc.*, No. 06-CV-1917, 2007 WL 2071622, at *5 (D. Conn. July 16, 2007).  Here, the TAC traces the life of Hunan Dynasty and its related corporate entities, including Chen's, and alleges the existence of a single enterprise— all ostensibly managed under the common ownership and control of Kevin Chen.

Further, the allegations in the TAC allow a reasonable inference that Plaintiffs seek to hold Chen's liable under a theory of successor liability. *See* TAC ¶¶ 20-28. Therefore, taken as a whole, the allegations are sufficient to state a plausible claim of successor liability as to Chen's.

Finally, the Moving Defendants argument that allegations of successor liability must possess an "independent basis of federal jurisdiction" misses the mark. *See* Mem. of Law at 6-7. In support of this argument, the Moving Defendants rely, *inter alia*, on the Supreme Court's ruling in *Peacock v. Thomas*, 516 U.S. 349, 353, 116 S. Ct. 862, 866 (1996). *Peacock* dealt with the issue of whether a plaintiff may institute a supplementary proceeding against a new party to enforce a prior federal judgment in the absence of an independent basis for federal jurisdiction. *See id.* The Supreme Court found that, to bring in a new party to enforce a prior federal judgment, an independent basis for federal jurisdiction must exist. *See id.* Here, the instant action does not deal with the enforcement of a prior federal judgment and Plaintiffs have alleged an independent basis of federal jurisdiction in the form of purported FLSA violations. Therefore, *Peacock* and its progeny are inapplicable to the instant action. Accordingly, the Court finds that the TAC adequately alleges successor liability as to Chen's.

### b. *Individual Liability: Andy Chen*

Defendants also argue that the TAC fails to adequately allege individual liability as to Andy Chen under the FLSA. *See* Defs. Mem. in Supp. at 4. To determine whether an individual qualifies as an "employer" under the FLSA, the

Second Circuit applies the economic realities test, which focuses on four factors—
"whether the alleged employer (1) had the power to hire and fire the employees, (2)
supervised and controlled employee work schedules or conditions of employment, (3)
determined the rate and method of payment, and (4) maintained employment
records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013); *see also Schear
v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014) (citing the same four
factors). This test "applies equally to the FLSA and NYLL," *Chen*, 2016 WL 5678543,
at *3, and no one factor is dispositive. *Irizarry*, 722 F.3d at 105; *see also Ramirez v.
Riverbay Corp.*, 35 F. Supp. 3d 513, 521 (S.D.N.Y. 2014), *appeal withdrawn* (Dec. 8,
2014), *appeal withdrawn* (Dec. 9, 2014) ("This set of factors is intended to be
"nonexclusive and overlapping . . . .") (internal quotation marks omitted). The
analysis depends on whether the defendant had "operational control" over employees.
*Irizarry*, 722 F.3d at 110.

The Court finds that the TAC sufficiently alleges individual liability as to Andy
Chen. Plaintiffs allege that Andy Chen is the "CEO, owner, operator, manager,
principal and/or agent of" Chen's, [ . . . ] that he controls "the restaurant's day-to-day
operations," and that he transferred materials between Chen's and Fenny.
TAC ¶¶ 25, 34. Further, as set forth above, the TAC alleges that Wen Mei, Fenny,
and Chen's are a single and joint employer. *See id.* ¶¶ 20-28. These statements are
sufficient to establish that Andy Chen is an "employer" under the FLSA and NYLL,
as he served as a manager over the day-to-day affairs of the restaurants, of which
their respective corporate entities are alleged to be a single and joint enterprise.

Accordingly, as the TAC plausibly alleges individual liability as to Andy Chen, the Court recommends that the portion of the Moving Defendants' motion seeking dismissal for a lack of subject matter jurisdiction be denied.

### 2. *Rule 12(b)(6): Failure to State a Claim*

The Moving Defendants also argue that the claims in the TAC should be dismissed under Rule 12(b)(6) because they are time-barred.  Specifically, the Moving Defendants seek dismissal as to both Chen's and Andy Chen, arguing that the TAC fails to satisfy the provisions of Rule 15(c) such that the claims against them relate back to the original complaint.  *See* Defs. Mem. in Supp. at 8-9.  The Moving Defendants also argue that Plaintiffs' minimum wage claims made pursuant to the FLSA and NYLL are untimely as to all Defendants and are similarly subject to dismissal.[5]  *See id.* at 7-8.  Although the Moving Defendants only assert that the claims are untimely under the FLSA, the Court analyzes the pertinent statute of limitations under both the FLSA and NYLL, and concludes that the minimum wage claims are not precluded under either statute.

### a. <u>Relation Back: Chen's and Andy Chen</u>

"Rule 15(c)(1)(C) provides the federal standard for relation back" when an amendment to the pleadings adds a party to an action.  *Hogan v. Fischer*, 738 F.3d

---

[5] The Second Circuit has recognized that "a court reviewing a Rule 15(c)(2) decision" regarding the relation back of proposed amendments "performs a function analogous to that performed by an appellate court reviewing a dismissal for failure to state a claim under Rule 12(b)(6)" and, as such, should employ a *de novo* standard.  *Slayton v. American Express Co.*, 460 F.3d 215, 227-228 (2d Cir. 2006).

509, 517 (2d Cir. 2013). An amended complaint that adds a new party must meet the following criteria to relate back under Rule 15(c)(1)(C):

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third criteria are fulfilled within [90] days of the filing of the original complaint . . . .

*Id.* Here, the Court addresses the first three elements as the TAC was not filed within ninety days of the original Complaint. Regarding the first element, the relevant inquiry centers on whether the facts set forth in the original pleading establish a related identity of conduct as to the amended pleading. *See Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 71 (E.D.N.Y. 2015).

To satisfy the second element under Rule 15(c)(1)(C), a plaintiff may plead that two defendants are so "closely related in their business activities or linked in their corporate structure" as to have an "identity of interest." *Hahn v. Office & Prof'l Employees Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 384 (S.D.N.Y. 2015). In such a case, "the institution of an action against one party will constitute imputed notice" to the related party later named in an amended complaint. *In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025 (2d Cir. 1989); *see also S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10-CV-7547, 2013 WL 1234937, at *5 (S.D.N.Y. Mar. 26, 2013). A showing of identity of interest requires "substantial structural and corporate identity, such as shared organizers, officers, directors, and offices." *Allbrand Appliance*, 875 F.2d at 1025.

26

As to the third element, the relevant inquiry is not whether the plaintiff made a mistake, but whether the defendant "knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548, 130 S.Ct. 2485, 2493 (2010).   In this context, the Supreme Court has stated that:

> A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Id.*  Therefore, to satisfy the third requirement, a plaintiff must show that he made a mistake about the identity of the proper defendant and that the proposed defendant knew or should have known that, but for the mistake, it would have been sued. *See id.*  If the proposed defendant "understood, or . . . should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity," then this element is satisfied. *Id.* at 550, 130 S.Ct. at 2495.  Similar to the second element, courts have also considered the identity of interests paradigm in relation to the mistake requirement. *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475, 2012 WL 6962199, at *5 (E.D.N.Y. Oct. 22, 2012) *report and recommendation adopted*, No. 09-CV-5475, 2013 WL 357820 (E.D.N.Y. Jan. 29, 2013)(quoting 6A WRIGHT, MILLER & KANE, FED. PRAC. & PROC. CIV. § 1499 (3d ed.)).

Here, the addition of Chen's and Andy Chen relates back to the filing of the original Complaint. Specifically, as previously set forth in this Court's December 21, 2016 Order, the claims asserted against those Defendants arise out of the original Complaint's allegedly unlawful conduct: the willful failure to pay the minimum wage, spread of hour, and overtime compensation. Further, Plaintiffs adequately allege an identity of interest between Chen's and Andy Chen on the one hand, and as to the other named Defendants on the other. Specifically, Plaintiffs allege that the related corporate entities, are a "single enterprise" directed by various members of Kevin Chen's family sharing similar corporate structures and officers. TAC ¶ 24. Therefore, the alleged identity of interest between Defendants permits imputation of notice to Chen's and Andy Chen. Finally, although Chen's was incorporated prior to the time of the filing of the original Complaint, Plaintiffs allegedly mistook the extent to which Chen's and Andy Chen were intertwined with the alleged unlawful conduct. As a result, Chen's and Andy Chen "understood, or [ . . . ] should have understood, that [they] escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about their identity" within the purportedly fraudulent scheme.[6] *Krupski*, 560 U.S. at 548, 130 S.Ct. at 2493. As such, Plaintiffs fulfill the

---

[6] The Court notes that, as the TAC sets forth allegations that occurred after the commencement of the suit, *i.e.*, the purportedly fraudulent transfer of assets between Wen Mei, Fenny, and Chen's, Rule 15(d) may also be applicable. Rule 15(d) states that the "court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15. While Rule 15(d) is silent as to the relation back doctrine as to new parties, several courts within this Circuit have applied the doctrine to similar factual scenarios. *See Soler v. G & U, Inc.*, 103 F.R.D. 69, 75 (S.D.N.Y. 1984); *Aktiebolag v. Andrx Pharm.*, Inc., 695 F. Supp. 2d 21, 28n.2 (S.D.N.Y. 2010).

third element.  Accordingly, the TAC satisfies the requirements of Rule 15(c)(1)(C) as to Defendants Andy Chen and Chen's and the claims against them relate back to the filing of the original complaint for statute of limitation purposes.

### b.  *FLSA Claims*

The Court next considers whether the TAC's minimum wage FLSA claims are time-barred.  "[I]n an FLSA collective action, the statute of limitation[s] runs for each plaintiff until he or she affirmatively opts in to the lawsuit."  *Chimes v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 204 (E.D.N.Y. 2015); *see also Jacobsen v. The Stop & Shop Supermarket Co.*, No. 02-CV-5915, 2004 WL 1918795, at *2 (S.D.N.Y. Aug. 27, 2004) ("The parties agree that, under the FLSA, the statute of limitations with respect to an individual's claim is not tolled until he or she files a written consent to join the collective action.").  Under the FLSA, the statute of limitations is two years, and is extended to three years for willful violations.  *Davis v. Lenox Hill Hosp.*, No. 03-CV-3746, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004).  Although, "whether this action is governed by a two or three-year statute of limitations is an issue of fact," because Defendants rely on the three-year limitation in their opposition, the Court assumes for the purposes of this motion that the longer time period applies.  *Id.*; *see also* Motion to Amend Opp. at 2 ("April 1, 2016 is more than 3 years after the latest date of employment by the living plaintiffs, December 31, 2012.").

The statute of limitations is tolled on the date on which the consents to join suit were filed.  Accordingly, the Court initially turns to the consents filed on March 25, 2015 by the five named Plaintiffs.  *See Arena v. Plandome Taxi Inc.*, No. 12-CV-

1078, 2013 WL 1748451, at *1 (E.D.N.Y. Apr. 23, 2013) ("An FLSA action is deemed commenced on the date of filing only for those named plaintiffs who have simultaneously filed consents to join the action.") (internal quotation marks omitted). Upon review, the Court finds that the consents encompass the minimum wage claim, expressly stating that the named Plaintiffs authorize the prosecution of claims on their behalf to contest the failure of Hunan Dynasty "to pay [them] overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act . . . ." *See* DE [29-33].  Moreover, in this Court's October 23, 2015 Memorandum and Order granting the FLSA Motion to Certify, it found that the allegations in the SAC and the declarations sufficiently placed Defendants on notice of Plaintiffs' minimum wage claims. *See* Am. Mem. and Order at 5, n.4.  Although the SAC had not yet been filed at the time the named Plaintiffs filed their consents to join, their declarations regarding the FLSA Motion to Certify were on the docket. *See* DE [26].  As such, the Court deems the consents filed by the named Plaintiffs sufficient to encompass a minimum wage cause of action.

The same is true for the opt-in Plaintiffs.  These Plaintiffs filed their consents based on the Notice of Pendency, the purpose of which is it provide "accurate and timely notice concerning the pend[ing] . . . collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate." *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).  Here, the Notice of Pendency includes references to minimum wage claims, stating that Plaintiffs

"have brought this action on behalf of all other current and former employees to recover unpaid minimum wages and overtime compensation." Notice of Pendency at 1. The second page states that "[y]ou may be owed payment if you worked for HUNAN DYNASTY and were not paid at least the minimum wage for all hours worked." *Id.* at 2. It continues, "[i]f you wish to participate in the portion of this lawsuit that seeks payment of improperly withheld minimum wages . . . you must sign and return the enclosed Consent to Joinder form as directed below." *Id.* This language in the Notice of Pendency sufficiently provides the potential plaintiffs with enough information concerning the minimum wage claim to support an "informed decision[] about whether to participate."

Here, the last date by which a named Plaintiff filed a consent was on March 25, 2015. The last date for which opt-in Plaintiffs filed consents was February 14, 2016, except for opt-in Plaintiffs Peifeng Hua and Zheng He, who filed late consents on September 23, 2016 and January 1, 2017, respectively. *See* DE [146]. Hua was employed by Defendants from on or about February 4, 2013 to August 31, 2013, *see* Letter Motion for Leave to File a Late Consent to Join Further, DE [160], at 2, and He was employed by Defendants from on or about September 2013 to June 2014. *See* Letter Motion for Leave to File a Late Consent to Join Further, DE [181], at 2. The Memorandum and Order granting the FLSA Motion to Certify equitably tolled the statute of limitations period from May 25, 2015 through October 23, 2015, the date of the Order. *See* Am. Mem. and Order at 14. This equitable tolling is for 151 days and therefore the statute of limitations has run on any claim under the FLSA prior to

September 16, 2012 (three years plus 151 days).  As the last named Plaintiff who complains of minimum wage violations was employed after September 2012, the Court concludes that the minimum wage claim is not time barred as to the named Plaintiffs or any opt-Plaintiff who filed prior to February 14, 2016.  *See* TAC ¶ 45 (alleging that Liu worked from March 29, 2013 through May 5, 2013 and was paid "\$60 per day for three days a week").  Further, as Hua was last employed by Defendants on August 31, 2013 and filed his consent on September 23, 2016, and He last worked for Defendants in June 2014 and filed his consent on January 1, 2017, both opt-in Plaintiffs fall within the three years and one hundred and fifty one day period.  As a result, their claims are not time-barred.  Accordingly, the Court finds that Plaintiffs' FLSA minimum wage claims are timely as to all Defendants.

### c. *NYLL Claims*

Turning to the NYLL, the Court initially focuses on the purported class members, as Plaintiffs allege the NYLL minimum wage cause of action on behalf of themselves and a class pursuant to Fed. R. Civ. P. 23.  It is well established that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756, 766 (1974).  While a potential class claim is pending, absent class members may "rely on the named plaintiffs to press their claims."  *Id.* at 353, 103 S.Ct. 2392.  Thus, tolling continues until the absent class members' reliance on the class action is no longer reasonable.  *See id.* at 354, 103 S.Ct. 2392.  For instance,

even if class certification is later denied, the putative class members retain the tolling effect for the period until the denial of certification. *See id.* Here, if the minimum wage claims relate back, the Complaint, filed on March 12, 2014 tolled and continues to toll, the statute of limitations for the NYLL class claims for the putative class. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350, 103 S. Ct. 2392, 2395 (1983) ("The filing of a class action tolls the statute of limitations as to all asserted members of the class . . . .") (quotation marks and citation omitted).

However, the Moving Defendants argue that TAC's NYLL minimum wage claims do not relate back to the original Complaint. *See* Defs. Mem. in Supp. at 8. As the statute of limitations under the NYLL is six years, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203, 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013), *aff'd,* 2016 WL 1045532 (E.D.N.Y. Mar. 15, 2016), and the Motion to Amend was filed on March 31, 2016, certain periods of employment for the named Plaintiffs are also barred unless such claims relate back to the filing of the original Complaint. *See* TAC ¶¶ 41-49 (Named Plaintiffs alleging that they were employed by Defendants as early as 2006 and through 2013). As set forth above, the relation back doctrine is governed by Rule 15(c), which provides, in relevant part: "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(2). The "central inquiry" under Rule 15(c)(2) "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the

statute of limitations 'by the general fact situation alleged in the original pleading.'" *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86–87 (2d Cir. 1999) (quoting *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir.1973)).

Applying the relation back doctrine here, the original Complaint, filed on March 12, 2014, clearly placed Defendants on notice of the minimum wage cause of action. Plaintiffs claim that the named Plaintiffs were paid $400 bi-monthly, and worked 55.5-63 hours per week. Compl. ¶¶ 7-15. Accordingly, the hourly wage amounts to, at most, $3.33, below the minimum wage in 2006. *See* N.Y. Lab. Law § 652 (minimum wage beginning January 1, 2006 was $6.75). Further, in alleging a class action, Plaintiffs state that "[a]ll the Class members were subject to the same corporate Defendants, as alleged herein, of failing to pay minimum wage . . . ." Compl. ¶ 22. Accordingly, as Plaintiffs set forth facts sufficient to support a minimum wage claim and expressly referenced such cause of action in the original Complaint, the class and individual minimum wage claims in the TAC relate back to the filing of the original Complaint. Therefore, any minimum wage claim that occurred after March 12, 2008 is viable, and that the portion of Defendants' motion seeking dismissal pursuant to Rule 12(b)(6) on timeliness grounds should be denied.

### 3. *Rule 25(a)(1): Failure to Substitute*

Defendants' motion to dismiss Plaintiff Zhang from the case pursuant to Fed. R. Civ. P. 25(a)(1) should be granted. On July 20, 2015, Defendants Wen Mei, Hunan Dynasty, Cindy Chen, and Kevin Chen submitted a notice to Court that "they have learned of the recent death of the [P]laintiff" Zhang. *See* DE [81]. Plaintiffs filed no

response and to date no motion for substitution has been filed.  Further, Plaintiffs

opposition papers fail to address this argument.  *Javed v. Medgar Evers Coll. of the

City Univ. of New York*, No. 15-CV-7424, 2017 WL 4357138, at *4 (E.D.N.Y. Sept. 29,

2017) ("[C]ourts in this circuit have held that '[a] plaintiff's failure to respond to

contentions raised in a motion to dismiss [ . . . ] constitutes an abandonment of those

claims.'").  As no party has been substituted for Zhang and no further action has been

taken on his behalf, it is the recommendation of this Court that the complaint be

dismissed pursuant to Rule 25(a)(1).

B. <u>Class Certification Motion</u>

Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), Plaintiffs seek

to certify the following class:

> All employees of the Defendants during the six years
> immediately preceding the initiation of this action up to the
> date up to the date of this decision, who were employed
> Defendants at Hunan Restaurant in any tipped or non-
> tipped position who are entitled to compensation from the
> Defendants for unpaid wages, and/or overtime wages,
> and/or spread of hour wages and/or other wages, and who
> are asserting claims under the New York State Labor Law,
> including without limitation, § 195 *et. seq.* and § 650 *et. seq.*

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pls.

Class Cert. Mem."), DE [198-1], at 2.  Plaintiffs seek an order appointing Plaintiffs

Liu, Lin, and Hsieh as class representatives and appointing Troy Law, PLLC as class

counsel.  *See id.* at 3.  While Defendants submit no arguments in opposition to the

proposed class definition, they object to class certification arguing that: (1) no

common issues are present: (2) the representative plaintiffs' claims are not typical of

the NYLL Class's claims: (3) common issues of law or fact do not predominate; and

(4) and a class action is not superior to individual litigation in this case.  *See generally* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification ("Defs. Mem. in Opp."), DE [202].

Initially, the Court considers the propriety of the proposed class definition.  A "fail-safe" class is one whose definition limits putative class members to those entitled to relief and therefore, the class members can only be known after a determination of liability.  *See Marin v. Apple-Metro, Inc.*, No. 12-CV-5274, 2017 WL 4950009, at *37 (E.D.N.Y. Oct. 4, 2017) ("A fail-safe class is one whose definition 'shields the putative class members from receiving an adverse judgment [ . . . ] [i]n other words, 'in a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment.'") (internal citation omitted).   Courts should not certify a proposed "fail-safe" class because they are:  (1) unfair to defendants; (2) prevent an adverse judgment being entered against plaintiffs; and (3) are unmanageable because the members of the class could only be known after a determination of liability. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

However, where a party proposes a "fail-safe" class, "courts have the discretion 'to . . . redefine the class to bring it within the scope of Rule 23.'" *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 70 (E.D.N.Y. 2014).  (internal quotations omitted).  Indeed,

> It is well-established that 'the court may, in its
> discretion . . . modify the definition of the proposed class to
> provide the necessary precision or to correct other
> deficiencies. In fact, the court has a duty to ensure that the

> class is properly constituted and has broad discretion to
> modify the class definition as appropriate to provide the
> necessary precision.

*Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 267 (E.D.N.Y. 2016) (quoting

*Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011)).

The Court finds that Plaintiffs' proposed class represents a "fail-safe" class and

respectfully recommends that it not be certified as defined.  As articulated by

Plaintiffs, the proposed class would be comprised of employees "who are entitled to

compensation from the Defendants" for unpaid wages and/or overtime wages, and/or

spread of hour wages and/or other wages . . . . " Thus, the only members of the class

would be employees who would prevail on their NYLL claims.  Thereby certifying the

proposed class would permit plaintiffs to litigate without risking an adverse

judgment, given that putative class members either "win and are in the class, which

by definition cannot lose its claim," or they "lose and are outside the class, and thus

are not bound by an adverse decision." *Ruiz v. Citibank, N.A.*, No. 10-CV-5950, 2015

WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 F. App'x 39 (2d Cir. 2017).

Instead, the Court recommends the following modified class definition:   "All

individuals who were employed or are currently employed by Defendants in any

tipped or non-tipped non-exempt positions during the six years immediately

preceding the initiation of this action up to the date of this decision."  By making

these modifications, membership in the class does not rest on whether the putative

class member is entitled to compensation under assorted violations of NYLL.  The

Court next proceeds to consider as to whether the modified class definition set forth above should be certified pursuant to Rules 23(a) and (b)(3).

### 1. *Rule 23(a)(1): Numerosity*

The first Rule 23(a) requirement for class certification is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In determining whether plaintiffs have satisfied Rule 23's numerosity requirement, courts conduct a "case-by-case analysis of the facts[.]" *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012). Within the Second Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Gortat v. Capala Bros.*, 949 F.Supp.2d 374, 383 (E.D.N.Y. 2013). [A] plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts[.]" *Hill v. City of New York*, 136 F. Supp. 3d 304, 353 (E.D.N.Y. 2015). Relevant considerations as to the practicability of joinder include "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits." *Balverde v. Lunella Ristorante, Inc.*, No. 15-CV-5518, 2017 WL 1954934, at *5 (S.D.N.Y. May 10, 2017) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

Here, Plaintiffs allege that the proposed class consists of exclusively Chinese immigrants with limited resources to institute and litigate their claims individually. Further, in discovery, Defendants identified forty-four employees, which Plaintiffs

purport to be an incomplete list of potential class members. *See* Pls. Class Cert. Mem. at 8; *see also* Employee List, DE [198-4]. Therefore, considering the potential size and limited resources of the proposed class, the Court finds it reasonable to infer that joinder is impracticable and that the proposed class satisfies the requirement of numerosity.

### 2. *Rule 23(a)(2): Commonality*

The second Rule 23(a) requirement for class certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must establish that class members have "suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that it is capable of class[-]wide resolution." *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (citation and quotation marks omitted). "A court may find a common issue of law even though there exists 'some factual variation among class members' specific grievances . . . .'" *Han v. Sterling Nat'l Mortg. Co.*, No. 09-CV-5589, 2011 WL 4344235, at *3 (E.D.N.Y. Sept. 14, 2011) (quoting *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d at 231, 240 (E.D.N.Y. 1998)). "The commonality requirement may [thus] be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct." *Id.* (internal quotation marks and citations omitted). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10-CV-5255, 2013 WL 2395288, at *5 (E.D.N.Y. May 31, 2013), *report and recommendation adopted sub nom. Rosario v.*

*Valentine Ave. Disc. Store*, Co., No. 10-CV-5255, 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013).

Here, Plaintiffs assert that they were subjected to a common unlawful policy committed by the corporate Defendants, acting as a single enterprise at the direction of the individual Defendants.  Therefore, the common issue of law as to the existence of whether the various entities are joint employers and whether they maintained a common unlawful policy resulting in wage and hour violations of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551. Accordingly, the TAC adequately alleges commonality.  *See*, *e.g.*, *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (finding commonality where plaintiffs were employed by three separate restaurants because "there was ample evidence . . . of common ownership"); *see also Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 334 n.20 (S.D.N.Y. 2009) (finding a common policy of pay practices based in part on the identical allegations made by other employees).

### 3. *Rule 23(a)(3): Typicality*

The third Rule 23(a) requirement for class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This "'requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (quoting *Robidoux*, 987 F.2d at 936). "Rule

40

23(a)(3) requires only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015) (citation and quotation marks omitted).  Typicality is "not highly demanding." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (citation and quotation marks omitted).  As a practical matter, the typicality requirement tends to merge with the commonality requirement "because [b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 2371 (1982).  "The typicality requirement is not satisfied and class certification is inappropriate, however, where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Briceno v. USI Services Group, Inc.*, 09-CV-4252, 2012 WL 4511626 (E.D.N.Y. Sept. 28, 2012) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Here, the named Plaintiffs allege that, among other things, they were not paid minimum wage, overtime compensation, or a spread of hour premium, and argue that these practices violate the NYLL.  Those Plaintiffs' factual allegations and legal arguments apply to the proposed class across the board to all employees who have been denied minimum wage and overtime pay.  Therefore, the typicality requirement is satisfied because the named Plaintiffs' claims are for the same type of injury under

the same legal theory as the rest of the class.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Robidoux*, 987 F.2d at 936) ("[T]ypicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.").  Defendants argue that Plaintiffs fails to satisfy typicality because they never worked directly for each of the corporate entities. *See*  Defs. *See* Mem. in Opp. at 5.  However, that the individual class members were employed by different corporate entities does not, by itself, defeat typicality, so long as their claims are typical of the class.  *See Rosario*, 2013 WL 2395288, at *7 ("That the individual class members were employed by different stores and performed different tasks does not defeat typicality, nor does it matter, as defendant argues, that plaintiff Rosario worked for only some of the defendant stores.").  Accordingly, the Court finds that Plaintiffs satisfy the requirements of typicality.

### 4.  *Rule 23(a)(4): Adequacy*

Finally, Rule 23(a) requires that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation entails an inquiry as to whether: "plaintiff's interests are antagonistic to the interest of other members of the class."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 2250 (1997).

Here, Plaintiffs Liu, Lin, and Hsieh are proffered as potential class representatives.  Plaintiffs affirm that these individuals are prepared to protect the interests of all class members.  *See* Pls. Class Cert Mem. at 10-11. Further, there is no alleged conflict of interest between the proposed class representatives and the putative class.  Finally, Defendants do not oppose a finding of adequacy and the record does not suggest that any of the proposed class representatives would be inadequate.  The Court therefore finds that Plaintiffs Liu, Lin, and Hsieh will adequately represent the absent class members and recommends that they be appointed class representatives.

The Moving Defendants also argue that Plaintiffs are not similarly situated to members of the class because they did not have the same job duties.  *See* Defs. Opp. at 7-8.  However, all prospective class members need not have the same duties to be similarly situated.  Rather, the relevant questions are whether "they were all similarly situated with respect to being subject to the same policy of being denied [ . . . ] compensation" and whether a factual nexus exists among them.  *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) (emphasis in original).  Here, as discussed above, Plaintiffs are allegedly subject to the same unlawful policies and a factual nexus exists in that they were employed by the various corporate entities operating as a single enterprise.  *See Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 370 (S.D.N.Y. 2014) (assuming, for purposes of a motion for conditional certification, that "distinct entities can be treated as a single 'employer' under the FLSA if they qualify as a 'single integrated enterprise'").

43

Accordingly, at this stage of the litigation, consistent with the Court's Conditional Certification Order on September 30, 2014, Plaintiffs have sufficiently alleged that they are similarly situated to members of the class.

### 5. Ascertainability

In addition to the express requirements of Rule 23(a), courts within the Second Circuit have consistently recognized the "implied requirement of ascertainability." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quotations and citations omitted); *In re Initial Pub. Offerings*, 471 F.3d at 30 (2d Cir. 2006); *Ruffo v. Adidas Am. Inc.*, 15-CV-5989, 2016 WL 4581344, at *2 (S.D.N.Y. Sept. 2, 2016) ("Plaintiffs have not satisfied the predominance or ascertainability requirements."). "[T]he touchstone of acsertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher*, 806 F.3d at 24 (citations and quotation marks omitted). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Huebner v. Midland Credit Mgmt., Inc.*, 14-CV-6046, 2016 WL 3172789, at *7 (E.D.N.Y. June 6, 2016) (citation and quotation marks omitted). "[T]he use of objective criteria cannot alone determine ascertainability when those criteria, taken together, do not establish the definite boundaries of a readily identifiable class." *Brecher*, 806 F.3d at 25.

Plaintiff's proposed class of employees "who have not been paid all wages owed to them, including minimum wage payments and overtime payments, in violation of

the New York Labor Law" is the type of class definition based on defendants' alleged liability which satisfies ascertainability. *Rosario*, 2013 WL 2395288, at \*4. Whether employees have been paid the wages owed to them is an objective question that turns on the number of hours they worked and the wages they were paid. *See Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012) ("The class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements.") (internal citations omitted). Based on the instant record, the Court finds that Plaintiffs' proposed class is ascertainable. The class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements. *Flores*, 284 F.R.D. at 123.

### 6. *Rule 23(b)(3) Requirements*

As previously discussed, in addition to Rule 23(a)'s requirements, Plaintiffs invoke Rule 23(b)(3), which requires a showing that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," *i.e.*, predominance, and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [,]" *i.e.*, superiority. Fed. R. Civ. P. 23(b)(3).

### a. *Predominance*

Under Fed. R. Civ. P. 23(b)(3), "[t]he court has a duty to take a close look at whether common questions predominate over individual ones." *Comcast Corp*, 569 U.S. at 34, 133 S. Ct. at 1432 (internal citation omitted). The predominance requirement "imposes a 'far more demanding' inquiry into the common issues which

serve as the basis for class certification." *Sykes*, 780 F.3d at 81 (quoting *Amchem*, 521 U.S. at 623–24, 117 S.Ct. at 2231). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citations omitted).

Plaintiffs propose that the following as common questions that predominate:

(1) Whether Defendant Corporations are joint employers who are jointly liable for violations under the New York Labor Law;

(2) Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

(3) Whether Defendants paid Plaintiffs and Class members the minimum wage for all hours worked;

(4) Whether Plaintiffs and Class members are entitled to overtime under the New York Labor Law;

(5) At what common rate, or rates were Defendants required to pay the Class members for their work;

(6) Whether Defendants illegally retained portions of the Class members' tips; and

(7) Whether Plaintiffs were unlawfully forced to share their tips.

In opposition, Defendants argue that the proposed class worked for different restaurants, owned by different corporations at different time periods. *See* Defs. Opp. at 7. Therefore, "[f]acts which prove that employees at one restaurant were the victims of violations of the labor laws would have no bearing on employees of the other restaurants." *Id.*

Here, common questions predominate over individual ones. Whether Defendants maintained a single enterprise with unlawful common payment policies are questions common to all Plaintiffs' claims can be established through the employees' testimony, the testimony of Defendant Kevin Chen and the other individually named Defendants. Further, the question of whether class members were properly paid can be addressed by class-wide proof regarding the accuracy of defendants' payroll records, defendants' financial records, and testimony. While each class member will have different damages depending on the length of time they were employed, the wages they received, and the hours they worked, such questions do not defeat predominance. Accordingly, common questions of liability predominate over individual inquiries.

### b. *Superiority*

In addition to establishing predominance, Plaintiffs must also demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Among the relevant factors a Court considers are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id.*

Here, a class action is the superior method of adjudicating the class claims. There is no identifiable interest in single plaintiffs commencing prosecution of these claims in separate actions and no evidence in the record of any other pending litigation regarding these claims or parties in any other court. Further, the underlying conduct allegedly took place in this judicial district, and consequently litigation in this Court is appropriate, and there does not appear to be any unusual difficulty in managing this case as a class action. Further, the fact this litigation has already been certified as a collective action supports the superiority of class litigation as an appropriate vehicle "given that the New York Labor Law claims are nearly identical to the FLSA claims. . . ." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012). Accordingly, the Court concludes that a class action is superior to other available methods for fair and efficient adjudication of the instant claims.

### 7. *Rule 23(g): Class Counsel*

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel.[7] Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

---

[7] As noted in the Advisory Committee's Notes to the 2003 Amendments for Fed.R.Civ.P. 23(g), the adequacy of class counsel is now considered under Fed.R.Civ.P. 23(g), rather than as part of the adequacy requirement of Fed.R.Civ.P. 23(a)(4).

Fed. R. Civ. P. 23(g)(1)(A).  A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs request that Plaintiffs' counsel be appointed to represent the class. *See* Pls. Class Cert. Mem. at 10-11.  According to the declaration submitted by John Troy, Esq., Troy Law PLLC has extensive experience in litigating complex employment cases, as well as cases focusing on employment law and wage and hour issues. *See* Declaration of John Troy, DE [198-2], at 2.  The Court also notes that counsel has done significant work in litigating this matter up until this point.  Based on the resources counsel has already invested in this matter, and the quality of the work performed on Plaintiffs' behalf, the Court recommends that Troy Law PLLC be appointed as class counsel.

For all of the above reasons, Plaintiffs' motion for class certification should be granted as to the modified class definition.  Finally, Plaintiffs also annex a proposed class action notice, which they wish to circulate to all putative class members by way of publication in Mandarin in the "World Journal," a Mandarin-language newspaper, for five consecutive weekends.[8]  *See* Proposed Notice to Class Members ("Proposed Notice"), DE [198-20].  Rule 23(c)(2)(B) requires that "class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class

---

[8] Defendants raise no objections as to the proposed class action notice or the suggested method of publication.

members who would be bound by the proposal."). Here, neither Plaintiffs nor Defendants address the production of employee contact information, scheduling of notice, or a potential opt-out period for putative class members. Further, it is not clear from the submissions whether Plaintiffs seek notice solely from publication in the "World Journal" or if they seek additional means of notice. Therefore, the Court is unable to discern whether the proposed class notice complies with the requirements of Fed. R. Civ. P. 23(c)(2)(B). Accordingly, in the event that this Report and Recommendation is adopted, the Court recommends that Plaintiffs be granted leave to file a motion for approval of a proposed class notice, which *inter alia*, addresses the production of employee contact information, scheduling of the publication and distribution of the proposed notice, and a proposed opt-out deadline for putative class members.

## V.   CONCLUSION

For the reasons discussed above, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part and that Plaintiffs' motion to certify be granted as to the modified class. Specifically, the Court recommends that the portion of Defendants' motion seeking dismissal pursuant to Rules 12(b)(1) and 12(b)(6) be denied, but the portion seeking dismissal of Plaintiff Zhang's claims pursuant to Rule 25(a)(1) be granted and that he be removed from the caption as a Plaintiff in this case. The Court further recommends that Plaintiffs' motion for class certification be denied as to the proposed class, but granted as to the following modified class:  "All individuals who were employed or are currently employed by

Defendants in any tipped or non-tipped non-exempt positions during the six years immediately preceding the initiation of this action up to the date of this decision." Further, the Court recommends that Plaintiffs Liu, Lin, and Hseih be appointed as class representatives and that Troy Law, PLLC be appointed class counsel. Finally, in the event that this Report and Recommendation is adopted, the Court recommends that Plaintiffs be granted leave to file a motion for approval of a proposed class notice, which *inter alia*, addresses the production of employee contact information, scheduling of the publication and distribution of the proposed notice, and a proposed opt-out deadline for putative class members.

## VI.   OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York          **SO ORDERED**
            December 28, 2017

                                              s/ Steven I. Locke
                                              STEVEN I. LOCKE
                                              United States Magistrate Judge