UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RU HAO LIU, a/k/a JASON LIU, XIU QUIN
LIN, HSIA SHENG CHENG, and CHIEN
WEN HSIEH /a/a KEVIN HSIEH, on behalf
of themselves and others similarly situated,

                Plaintiffs,

          -against-

WEN MEI, INC., d/b/a HUNAN DYNASTY,
HUNAN DYNASTY AT LEVITTOWN INC.
d/b/a HUNAN DYNASTY, FENNY JAPANESE
AND CHINESE RESTAURANT INC. d/b/a
HUNAN DYNASTY, CHEN'S CHINESE
RESATURANT, INC. d/b/a HUNAN DYNASTY,
XIANG RONG CHEN a/k/a KEVIN CHEN,
BAIFENG CHEN, a/k/a ANDY CHEN, CAI
FEN CHEN, CINDY CHEN, and LUQI XIE,

                Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

14-CV-1647 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court on referral from the Hon. Joanna Seybert for Report

and Recommendation in this wage and hour class and collective action litigation,

brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*,

New York Labor Law, ("NYLL") N.Y. Lab. L. § 190, *et seq.*, and related state

regulations, is Defendants' Wen Mei, Inc. d/b/a Hunan Dynasty ("Wen Mei"), Hunan

Dynasty of Levittown, Inc. ("HDL"), d/b/a Hunan Dynasty, Fenny Japanese and

Chinese Restaurant Inc., d/b/a Hunan Dynasty ("Fenny"), Chen's Chinese Restaurant

d/b/a Hunan Dynasty ("Chen's"), Xiang Rong Chen, a/k/a Kevin Chen ("Kevin Chen"),

Baifeng Chen a/k/a Andy Chen ("Andy Chen"), Cai Fen Chen, Cindy Chen and Luqi

Xie ("Defendants") motion for summary judgment and to decertify the FLSA collective class. *See* Docket Entry ("DE") [270]-[272], [274], [278].  Plaintiffs oppose the motion. *See* DE [275], [276].  For the reasons set forth below, the Court recommends that both motions be denied in their entirety with the exception of dismissal of Plaintiff Ru Hao Liu on consent.

## I.      BACKGROUND

At the outset, the Court notes that the parties' motion papers are virtually impossible to follow.  Defendants' Joint Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment, ("DSUMF") DE [270-2] and Plaintiffs' Counterstatement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment, DE [274] contain nothing more than a disjointed recitation of legal arguments and a few unexplained references to the record, leaving the Court to comb the docket to determine what the most basic facts of this case are.

Upon reviewing the record, it seems that many of the most central facts are in dispute.  For example, the named Plaintiffs allege that they were employed by the various Defendants, which successively operated a restaurant known as Hunan Dynasty ("Hunan Dynasty" or the "Restaurant") in Levittown, New York, and later East Meadow, New York, as waiters, replacement waiters, and non-tipped "packer" assistants.[1]  Third Amended Complaint ("TAC"), DE [173] ¶¶ 41-49.  Except to admit that one named Plaintiff, Hsia Sheng Cheng was employed as waiter by HDL,

---

[1] It appears that the title "packer" refers to an individual who packs food for delivery or pick up.  *See* Deposition of Cai Fen Chen, DE [257-13] at 36.

Defendants appear to deny that other Plaintiffs ever worked for them.  *See* Defendants' First Amended Answer to Third Amended Complaint ("Answer"), DE [223], ¶¶ 41-49.  Accordingly, the facts outlined below are those most favorable to Plaintiffs, the posture required when considering a motion for summary judgment.

According to the named Plaintiffs' evidence, Xiu Qin Lin was employed as a waiter at the Restaurant, located at 2993 Hempstead Turnpike in Levittown, New York from August 1, 2008 through September 21, 2012.  *See* Affidavit of Xiu Qin Lin, DE [26-5] ¶¶ 3-11; Affidavit of Xiu Qin Lin, DE [198-6] ¶¶ 3-9; *see also* Dep. of Cindy Chen, DE [257-15] at 9 (confirming the address).  He worked six days each week for more than 40 hours per week without overtime pay or being paid the minimum wage, and he frequently worked more than ten hours per day without spread of hours pay. *See* Affidavit of Xiu Qin Lin, DE [26-5] ¶¶ 3-11; Affidavit of Xiu Qin Lin, DE [198-6] ¶¶ 3-9.  Similarly, Plaintiff Hsia Sheng Cheng worked for Wen Mei as a waiter from January 1, 2007 through December 31, 2012 working more than 40 hours per week without proper overtime pay, and he also frequently worked more than ten hours per day without spread of hours pay.  *See* Affidavit of Hsia Sheng Cheng, DE [26-6] ¶¶ 3-12.  Chein Wen Hsieh, who was employed by HDL and Wen Mei as waiter from April 1, 2012 through April 15, 2012, and Yi Qi Dai, who was a busser, and then a waiter, for Wen Mei during 2005, 2006 through 2008, and from May 5, 2010 through August 5, 2013, both worked more than 40 hours per week, frequently more than ten hours per day without being paid overtime or spread of hours pay.  *See* Affidavit of Chein Wen Hsieg, DE [26-7] ¶¶ 3-11; Affidavit of Chien Wen Hsieh, DE [198-7] ¶¶ 3-6; Dep.

3

of Chien Wen Ieh, DE [272]-6 at 6;[2] Affidavit of Yi Qi Dai, DE [26-8] ¶¶ 4-13. Moreover, Plaintiffs never received statements concerning hours worked, rates paid, gross wages, detailed pay stubs or notice in their primary language, about the terms or conditions of their employment. *See* Affidavit of Chien Wen Hsieh, DE [198-7] ¶¶7-9; Affidavit of Xiu Qin Lin, DE [198-6] ¶¶ 7-9. [3]

Other non-named class members tell similar stories. Chin Lai Pheng was employed by Defendants as a cashier at the Restaurant from September 14, 2011 to September 30, 2015, during which time he worked 62 hours each week without being paid the minimum wage, overtime or spread of hours pay, and did not receive proper wage notices. *See* Affidavit of Chin Lai Pheng, DE [198-8] at ¶¶ 3-9. Waiter Wei Cui Feng worked for Defendants at the Restaurant from October 12, 2012 through September 27, 2014, 66 hours per week without receiving overtime, the statutorily mandated minimum wage, spread of hours pay, or proper wage notices. *See* Affidavit of Wei Cui Feng, DE [198-9], ¶¶ 3-11. Non-tipped packer Ya Hong Cui worked at the Restaurant from November 29, 2013 to August 9, 2014, 66 hours per week, also without receiving overtime pay, the minimum wage, spread hours pay or wage

---

[2] From the details of the Affidavits of Chein Wen Hseih and Chien Wen Hseih, in particular the limited dates of employment, these affidavits appear to be from the same person. *Compare* DE [26-7] ¶3 *with* [198-7] ¶ 3. Moreover, it appears from deposition testimony that both spellings of this individual's name are incorrect, and that this Plaintiff's name is actually Chien Wen Ieh. *See* Deposition of Chien Wen Ieh, DE [272-6] at 4. At Mr. Ieh's deposition, contrary to his affidavit, he states that he worked for Hunan Dynasty of Levittown Inc. but not Wen Mei. *See id.* at 6.

[3] Almost identical statements are made by two other former Plaintiffs Jie Zhang, *see* Affidavit of Jie Zhang, DE [26-3] and Ru Hao Liu, *see* Affidavit of Ru Hao Lu, DE [26-4], DE [198-5]. *See* DE [26-4] ¶ 6; DE [198-5] ¶¶ 2, 7. Jie Zhang was dismissed from this litigation in prior proceedings due to his passing away, *see* DE [212], adopted DE [216], and Plaintiffs now consent to Ru Hao Lu being dismissed from this case as a named Plaintiff for the same reason. *See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and to Decertify Class, DE [276] at 14.

notices. *See* Affidavit of Ya Hong Cui, DE [198-10] ¶¶ 3-10; *see also* Affidavit of Xunzheng Shao, DE [198-11] ¶¶ 3-11 (confirming failure to pay waiter overtime, minimum wage, spread of hours pay, or provide wage notices from October 28, 2014 to September 27, 2015); Affidavit of Xun Lin Xie ¶¶ 2-10, DE [198-12] (same for waiter from August 20, 2015 through September 27, 2015); Affidavit of Zhengjie Ge ¶¶ 2-13 (same for waiter and non-tipped packer during various time periods from October 2006 to May 5, 2013); Affidavit of Xin You Lai, DE [198-14] ¶¶ 2-10 (same for waiter from October 28, 2014 to September 27, 2015);[4] Affidavit of Yao Xue, DE [198-15] ¶¶ 2-12 (same for delivery driver working from April 1, 2012 to October 1, 2012); Affidavit of Song Bo, DE [198-16] ¶¶ 2-10 (same for busboy who worked from July 1, 2009 to April 1, 2010); Affidavit of Eu Tack Fatt, DE [198-17], ¶¶ 2-10 (same for waiter who worked from August 26, 2015 to September 27, 2015); Affidavit of Pei Feng Hua, DE [198-18] ¶¶ 2-10 (same for busboy working from February 4, 2013 to August 31, 2013); Affidavit of Kwee Keong Lai, DE [198-19] ¶¶ 2-10 (same for waiter working from on or about June 2014 to October 12, 2014). Moreover, the class members never received statements concerning hours worked, rates paid, gross wages, detailed pay stubs or notices in their primary language about the terms or conditions of their employment. *See id.*

Defendants HDL, Wen Mei and Fenny all operated the Restaurant out of the same location in Levittown under the name Hunan Dynasty with the same phone

---

[4] There is also evidence that to the extent that employees were made to sign for their compensation, the records of hours worked and wages paid according to those statements were false. *See*, *e.g.*, Affidavit of Xin You Lai, DE [198-14] ¶ 13; Affidavit of Yao Xue, DE [198-15] ¶ 15.

number.  Deposition Transcript ("Dep.") of Cai Fen Chen, DE [257-13] at 17; Dep. of Kevin Chen, DE [257-16] at 13-14.  HDL was owned and managed by Kevin Chen, who did all the staff hiring.  *See* Dep. of Cindy Chen, DE [257-15] at 8-9, 33; Dep. of Kevin Chen, DE [257-16] at 10-13 ("I was the boss").  Defendant Cindy Chen, Kevin Chen's sister, worked there as well.  Dep. of Cindy Chen, DE [257-14] at 15-17.  HDL ceased operating in April 2012 when the business was sold to Wen Mei.  Declaration ("Decl.") of Cai Fen Chen, DE [270-3], ¶ 2.

When Wen Mei took over the Restaurant, it took over the assets of HDL, which had been operating from 2004 to 2011, Kevin Chen remained as manager and the food, chef and employees remained the same.  Decl. of Kevin Chen, DE [10] at 10-11;[5] Dep. of Cai Fen Chen, DE [257-12]. at 25-27. ("Nothing changed. . . . Employees have not changed much"); *see also* Dep. of Cai Fen Chen, DE [257-13] at 46 (sometimes the employees change after working some time); Dep. of Cindy Chen, DE [257-15] at 32 (more than half of Wen Mei's employees came from HDL); Dep. of Kevin Chen, DE [257-16] at 16, 18, 51-52 (confirming HDL years of operation and that employees remained the same).  Wen Mei paid $30,000 to take over the Restaurant.  Dep. of Cindy Chen, DE [257-15] at 10; Dep. of Kevin Chen, DE [257-16] at 51.  As manager, Kevin Chen had the authority to fire employees and manage work schedules.  *See*, *e.g.*, Affidavit of Xiu Qin Lin, DE [198-5] ¶ 13 ("Kevin would interrupt our break and threaten to fire us or send us home if we did not cut our break short"); Affidavit of Chien Wen Hseih, DE [198-7] ¶ 15 (same); Affidavit of Wei Cui Feng, DE [198-9] ¶ 16

---

[5] During his deposition, Kevin Chen changed his testimony, stating that he was only manager for HDL. Dep. of Kevin Chen at 21-22.

6

(same); Affidavit of Zhengjie Ge, DE [198-13] ¶ 19 (same); Affidavit of Yao Xue, DE [198-15], ¶ 19 (same). Cindy Chen was the owner and President of Wen Mei, though she did not manage the Restaurant.[6] Kevin Chen remained responsible for opening the Restaurant, managing food supplies, dealing with the accountant, training and managing employees, including hiring, payroll and bonuses for Chinese New Year, and after some period of time, he had access to the company bank account. Dep. of Cindy Chen, DE [257-14] at 18, 20-21, 48; Dep. of Cindy Chen, DE [257-15] at 8, 12-14, 19, 22, 28-29, 38, 60; Dep. of Cai Fen Chen, DE [257-12] at 112-12, 25; Dep. of Cai Fen Chen, DE [257-13] at 49 (Kevin Chen told people what to do). Cindy would host, answer phones and talk to customers. Dep. of Cindy Chen, DE [257-14] at 18.[7]

Wen Mei then sold the business to Fenny in October 2014, also for $30,000. Decl. of Cai Fen Chen, DE [270-3] ¶ 4; Dep. of Cai Fen Chen, DE [257-13] at 17-18; Dep. of Cindy Chen, DE [257-14] at 23; Dep. of Luqi Xie, DE [257-17] at 13. Although Fenny is apparently a nickname for Kevin Chen, *see* Dep. of Cindy Chen, DE [257-14] at 20, Fenny was owned by Defendant Luqi Xie, Defendant Andy Chen's girlfriend—Andy Chen being Kevin Chen's and his wife Defendant Cai Fen Chen's son. Dep. of Luqi Xie, DE [257-17] at 25; Dep. of Cai Fen Chen, DE [257-13] at 13-14, 88, 98. Nevertheless, Kevin Chen stayed on as manager and also sets the work schedules. Dep. of Cai Fen Chen, DE [257-13] at 28, 39, 58-59; Dep. of Cindy Chen,

---

[6] Certain Plaintiffs state that Wen Mei was actually owned and operated by Kevin Chen. *See* Affidavit of Hsia Sheng Cheng, DE [26-6] ¶ 3; Affidavit of Chein Wen Hsieg, DE [26-7] ¶ 3; Affidavit of Yi Qi Dai, DE [26-8] ¶ 4.

[7] Cai Fen Chen testified the Cindy Chen "sometimes" managed the Restaurant and had responsibilities with respect to finances, including paying and scheduling employees. Dep. of Cai Fen Chen, DE [257-12] at 13-16, 38-39.

DE [257-15] at 68-69, 73; *see also* Dep. of Kevin Chen, DE [257-16] at 10, 27 (Kevin Chen's title at Fenny was "Leader" but his wife Cai Fen Chen was the "boss"); *see* Dep. of Luqi Xie, DE [257-17] at 9-10. Luqi Xie met Cindy Chen to discuss purchasing the Restaurant at Andy Chen's home, *see* Dep. of Cindy Chen, DE [257-15] at 70-71, Cai Fen Chen helped Luqi Xie prepare the necessary paperwork to incorporate Fenny, and she (Cai Fen Chen) maintained access to Fenny's bank account.  Dep. of Luqi Xie, DE [257-17] at 11, 33.  Similar to the transfer from HDL to Wen Mei, when the Restaurant moved from Wen Mei to Fenny, all of the assets were transferred, Dep. of Cindy Chen, DE [257-14] at 43-44, including the furniture, chef, food, kitchen equipment, and telephone number, though "there are some people that [were] replaced."  Dep. of Cai Fen Chen, DE [257-13] at 61-64 (the furniture, the employees, the chef and the food remained the same for Wen Mei and Fenny); Dep. of Cindy Chen, DE [257-15] at 74 (assets such as furniture and equipment went with the sale); *accord id.* at 96-97 (Kevin Chen's uncle worked at HDL, Wen Mei and Fenny).  Kevin Chen remained one of the managers and was responsible for hiring, while Cai Fen Chen was responsible for maintaining employment records.  Dep. of Luqi Xie, DE [257-17] at 15-16, 18-20 (Luqi Xie was more of an investor and rarely present—Kevin Chen was one of two managers).

In any event, according to Defendants, in September 2015 Fenny was sold to one of its delivery boys, Xu Xue Hua, again for $30,000, through a corporation known as Shanghai Food Gourmet Food, Inc.  Decl. of Cai Fen Chen, DE [270-3] ¶ 5 & Ex. B, DE [270-5] (contract of sale); Dep. of Cindy Chen, DE [257-15] at 71; Dep. of Cai

Fen Chen, DE [257-13] at 29; Dep. of Xue Xu Hua, DE [257-18] at 10-11, 19.  All of the usable equipment and whatever Restaurant property Luqi Xie received from the sale, such as liquor and food, went to Andy Chen for the next iteration of the Restaurant.  Dep. of Luqi Xie, DE [257-17] at 31-32; Dep. Of Xu Xue Hua, DE [257-18] at 21.  According to the purchaser, Kevin Chen was anxious to sell in order to avoid liability in litigation.  Dep. of Xu Xue Hua, DE [257-18] at 21-26.

Beginning in October 2014, Defendant Chen's began operating a Hunan Dynasty at a nearby location, 2292 Hempstead Turnpike, in East Meadow, New York.  *See id.* DE [257-12] at 28 (this location is five to six minutes apart by car); Decl. of Cai Fen Chen, DE [270-3] ¶ 5.  Chen's is owned by Defendant Andy Chen.  DE [257-12] at 89-90.  Kevin Chen works for Chen's half-days, with the title "Leader," doing everything that's needed, and Luqi Xie and Cai Fen Chen work there as well.  Dep. of Kevin Chen, DE [257-16] at 6, 8-9; Dep. of Luqi Xie, DE [257-17] at 23-24.  According to one former employee, Kevin Chen also provided the capital to open this restaurant.  Dep. of Xu Xue Hua, DE [257-18] at 27-28. Although Plaintiffs state that they shifted employees to the new Hunan Dynasty location after it opened, Kevin Chen denies this.  *Compare* Dep. of Xu Xue Hua, DE [257-18] at 20, 32 (approximately ten employees, the "good and senior employees" moved to the new restaurant); Affidavit of Wei Cui Feng, DE [198-9] ¶3; Affidavit of Kwee Keong Lai, DE [198-19] ¶ 3; Dep. of Xu Xue Hua, DE [257-18] at 20 *with* Dep. of Kevin Chen, DE [257-16] at 70 (no employees came over).

Defendant Cai Fen Chen, who is married to Kevin Chen, the sister-in-law of Defendant Cindy Chen, and mother of Andy Chen, was the person in charge of payroll for all of the corporate Defendants.  Declaration of Cai Fen Chen, DE [270-3] ¶ 3; *see also* Deposition of Cai Fen Chen, DE [257-12] at 8-10 (Cai Fen Chen worked at Hunan Dynasty and Wen Mei); Deposition of Cai Fen Chen, DE [257-13] at 12 (Cai Fen Chen worked at Fenny), 13-14, 88 (Cai Fen Chen is married to Kevin Chen); 88 (Cai Fai Chen works at Hunan Dynasty for Chen's); 98 (Cindy Chen is Kevin Chen's younger sister).  Further, Defendants Wen Mei, Fenny and Chen's use the same certified public accountant.  Declaration of Cai Fen Chen, DE [270-3] ¶ 12.

Based on these facts, Plaintiffs bring collective and class claims for: (1) overtime pay pursuant to the FLSA; (2) overtime pay pursuant to the NYLL and related New York State regulations; (3) spread of hours pay pursuant to the NYLL and related New York State regulations; (4) failure to provide mandatory wage notices pursuant to New York State Law; (5) failure to pay the minimum wage pursuant to the FLSA; and (6) failure to pay the minimum wage pursuant to the NYLL.  *See* TAC ¶¶ 49-87. [8]  The collective action claims brought pursuant to the FLSA are for current and former "chefs, waiters, delivery persons, kitchen workers, dish washers and all other equivalent employees performing all other restaurant-related duties at Hunan Dynasty, excluding corporate officers, administrative employees and customarily exempt employees."  *See* DE [102] (adopting Plaintiffs' definition of the collective without objection from Defendants).  The NYLL class

---

[8] The paragraphs in the Third Amended Complaint are misnumbered.  The references to the various causes of action begin at paragraph 49 on p.16.

consists of "all individuals who were employed or are currently employed by Defendants in any tipped or non-tipped non-exempt positions during the six years immediately preceding the initiation of this action" up to December 28, 2017. *See* DE [212] *adopted* [216].

In support of their motion for summary judgment, Defendants make a series of interlocking arguments that break down into several themes. Initially, they argue that the claims against HDL are time-barred. Once these claims are dismissed, those against the remaining corporate Defendants premised on successor liability fail as a matter of law, and as result, derivative claims against the individual Defendants are untenable as well. *See* DE [270-1] at 3-7, 9-10. Moreover, Plaintiffs' claims of failure-to-provide proper wages notices lack merit because Defendants' "very detailed paystubs" distributed to Plaintiffs suffice. *Id.* at 9-10.

Defendants further argue that decertification is appropriate because none of the Plaintiffs have viable claims against HDL, and the named Plaintiffs never worked for Fenny or Chen's. Accordingly, the class representatives are not similarly situated to an opt-in Plaintiffs, and the motion to decertify should be granted.

Because all of Defendants arguments misread the law and the facts in the record, the Court recommends that their motions be denied with the exception of the dismissal of Plaintiff Ru Hao Liu on consent.

## II.      DISCUSSION

### A. Defendants' Summary Judgment Motion.

#### 1. Legal Standard

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the "difficult" burden of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).  In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable

finder of fact could render a verdict in favor of the non-moving party."). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted).

### 2. Plaintiffs' FLSA Claims

#### a. Timeliness

Initially, Defendants argue that Plaintiffs' FLSA claims against HDL are time-barred. The statute of limitations period for claims of unpaid wages under the FLSA is two years from the date the claim accrued, or three years from the accrual date if the violation was willful. 29 U.S.C. § 255(a). The Second Circuit recognizes that "a violation is willful for purpose of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988). Defendants do not argue that the shorter statute of limitations applies for non-willful violations applies, and so that Court relies on the three-year period.

The act of filing a complaint does not, itself, toll the statute of limitations under the FLSA. *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013). Rather, the statute continues to run with respect to each potential plaintiff until he

or she files a written consent form opting into the action. *Thind v. Health first Mgt. Serv., LLC*, No. 14 Civ. 9539, 2015 WL 4554252, at *3 (S.D.N.Y. Jul. 29, 2015) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)). As set forth in the Court's October 23, 2015 Amended Memorandum & Order addressing Plaintiffs' motion for conditional certification, the named Plaintiffs filed their consents to opt-in forms on March 25, 2015. DE [102]. Accordingly, the named Plaintiffs' FLSA overtime claims based on Defendants' willful conduct occurring after after March 25, 2012 are timely.

Here Defendants argue that because HDL ceased operations on April 2, 2012, Plaintiffs' FLSA claims against HDL are time-barred. This argument fails for two reasons. Initially, all claims that accrued after March 25, 2012 and before April 2, 2012 fall within the three-year limitations period. Plaintiff Chein Wen Hseih states that he worked during this period and so his claims based on doing work during this window are timely. *See* Affidavit of Chein Wen Hseih, DE [26-7].

Moreover, the Court concludes that there is a question of material fact as to when HDL actually stopped operating. A reasonable jury could readily conclude that HDL never actually stopped its business at all. While Defendants point to an assignment of the Restaurant's lease to Wen Mei in 2012, the reality is that Hunan Dynasty kept operating in the same place, with the same equipment, the same employees and the same individuals maintaining operational control, especially Kevin Chen and Cai Fen Chen. The jury will be free to conclude that Defendants' evidence is nothing more than window dressing to hide their continuous unlawful

14

conduct within a single business operation.  As a result, Defendants' timeliness argument fails and the motion for summary judgment on this basis should be denied.

    b. Successor Liability

    Next, Defendants argue that the Plaintiffs' claims against Wen Mei, Fenny and Chen's based on a theory of successor liability fail as a matter of law.  The Court disagrees.

    As a preliminary matter, the claims at issue do not necessarily rely on a theory of successor liability.  Several Plaintiffs have expressly stated that they worked directly for Wen Mei and were denied overtime pay.  *See*, *e.g.*, Hsia Sheng Chang, DE [26-6]; Affidavits of Chein Wen Hseih, DE [26-7], [199-7]; Affidavit of Yi Qi Dai, DE [26-8].  Further, given the evidence that: (1) the various corporate Defendants all operated the Restaurant, with the same name, same management, and with the exception of Chen's, at the same location (and even Chen's was on the same road, only a few minutes away by car); and (2) that Plaintiffs claim to have worked during the various times that Wen Mei, Fenny's and Chen were active, the Court concludes that there is a question of material fact sufficient to defeat summary judgment as to whether Plaintiffs worked directly for these Defendants.  As a result, relying on a theory of successor liability may be unnecessary to sustain a cause of action.  *See*, *e.g.*, Affidavit of Chin Lai Pheng, DE [198-8] (cashier working from September 14, 2011 to September 30, 2015); Affidavit of Wei Cui Feng, DE [198-9] (working for Defendants from October 20, 2012 through September 27, 2014); Affidavit of Ya Hong Cui, DE [198-10] (packer workings from November 29, 2013 to August 9, 2014); Affidavit of

15

Xunzheng Shaw, DE [198-11] (waiter working from October 28, 2014 to September 27, 2015); Affidavit of Xun Lin Xie, DE [198-12] (waiter working from August 20, 2015 through September 27, 2015); Affidavit of Zhengjie Ge (waiter and non-tipped packer working various times from October 2006 to May 5, 2013); Affidavit of Xin You Lai, DE [198-14] (waiter working from October 28, 2014 to September 27, 2015); Affidavit of Yao Xue, DE [198-15] (delivery driver working from April 1, 2012 to October 1, 2012); Affidavit of Song Bo, DE [198-16] (busboy working from July 1, 2009 to April 1, 2010); Affidavit of Eu Tack Fatt, DE [198-17] (waiter working from August 26, 2015 to September 27, 2015); Affidavit of Pei Feng Hua, DE [198-18] (busboy working from February 4, 2013 to August 31, 2013); Affidavit of Kwee Keong Lai, DE [198-19] (waiter working from on or about June 2014 to October 12, 2014).[9]

That being said, the Court also concludes that Plaintiffs have demonstrated a question of material fact as to whether Wen Mei, Fenny and Chen's may be held liable on a theory of successor liability.  Although a company is not typically liable for the actions of its predecessors, in the Second Circuit courts "have employed two tests to determine if liability should be imposed on a successor. . . ."  *Chen v. DG&S NY, Inc.*, No. 14-CV-3435, 2016 WL 5678543, at *4 (E.D.N.Y. Sept. 29, 2016).  Under the

---

[9] To the extent that Defendants argue that none of the named Plaintiffs worked directly for Chen's or Fenny's, and so summary judgment is appropriate for these entities on this basis, given that the Court concludes successor liability may be established at trial, and given the length of this litigation, with the fact that two of the named Plaintiffs have passed away since this action commenced, the better course may be to consider a substitution of named Plaintiffs, rather than dismissal of an otherwise potentially meritorious causes of action.

Moreover, the Court rejects Defendants' argument that no viable claim exists because check stubs show that all wages were paid properly.  As set forth above, Plaintiffs provide evidence sufficient to establish that these documents were false.  *See, e.g.*, Affidavit of Xin You Lai, DE [198-14] ¶ 13; Affidavit Yao Xue, DE [198-5] ¶ 15.

traditional test, successor liability "will attach where:  (1) a successor expressly or impliedly assumed the predecessor's liabilities; (2) there was a consolidation or 'de facto merger' of predecessor and successor; (3) the successor corporation was a mere continuation of its predecessor; or (4) the transaction between successor and predecessor was entered into fraudulently to escape obligations."  *Id.* (citing *N.Y. v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006)).  Under the second test, substantial continuity, courts "focus[] on whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'"  *Id.* (quoting *Bautista v. Beyond Thai Kitchen, Inc.*, 14-CV-4335, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015)).

Applying these standards, there is ample evidence that a reasonable fact finder could rely upon to conclude that Wen Mei, Fenny and Chen's were all a continuation of the Restaurant's business without interruption, using the same management, equipment and assets, and therefore successors in interest sufficient to hold them liable for Plaintiffs' claims.  HDL, Wen Mei and Fenny all operated the Restaurant, never changing the name, with the same menu and equipment, at the same location, with almost all of the same employees, and all managed by Kevin Chen with Cai Fen Chen acting as a bookkeeper and payroll manager.  Given these facts, it appears that the operations of these three corporations were identical such that Plaintiffs might not even have known that any change in corporate ownership—nominal or otherwise—took place.  Although Chen's operated Hunan Dynasty at a different

location, the evidence establishes that the Restaurant was still managed by Kevin Chen with Cai Fen Chen still working there in the same capacity, and the best, most senior employees that worked for Fenny, and all of the usable equipment went to Chen's at Kevin Chen's direction.  These facts are sufficient to create a question of material fact as to Chen's successor liability and defeat summary judgment.

In reaching this conclusion, the Court acknowledges the evidence that ownership of each of the corporate Defendants was different, with Kevin Chen owning HDL, his sister Cindy Chen owning Wen Mei, his son's girlfriend Luqi Xie owning Fenny, and his son Andy Chen, owning Chen's, with the restaurant at the original location being taken over by a former employee.  The Court also notes that there is certain documentary evidence accompanying these changes, such as contracts of sale and changes in leases.  *See*, *e.g.*, DSUMF ¶ 8.  Given the totality of the facts above however, including that each time that corporate ownership of the Restaurant was transferred, it was done to family member or girlfriend, and always for $30,000, and always with Kevin Chen and Cai Fen Chen in control, the trier of fact would be free to conclude that these changes were nominal, nothing more than an attempt to avoid financial obligations, and that successor liability is appropriate.

c. Individual Liability

Defendants also claim that summary judgment in favor of the individual Defendants is appropriate because the causes of action against the corporate Defendants lack merit, and so the claims against the individuals are fatally flawed because they are merely "derivative."  *See* Memorandum of Law in Support of

Defendants' Motion for Summary Judgment or Partial Summary Judgment and Motion to Decertify, DE [270-1] at 10.  This argument fails for two reasons.

Initially, the claims against the individual Defendants are not derivative.  The FLSA provides for individual liability apart from corporate liability.  To determine whether an individual qualifies as an "employer" under the FLSA, the Second Circuit applies the "economic realities test," which focuses on four factors:  "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013); s*ee also Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014) (citing same four factors).  This test applies equally under the FLSA and NYLL, *Chen*, 2016 WL 5678543 at *3, and no one factor is dispositive.  *Irizarry*, 722 F.3d at 105; *see also Ramirez v. Riverbay Corp., et al*, 35 F. Supp. 3d 513, 521 (S.D.N.Y. 2014) (factors are non-exclusive and overlapping).  The test ultimately depends on whether an individual defendant has "operational control" over the employees.  *Irizarry*, 722 F.3d at 110.

Defendants do not even bother to address this four-factor test in their motion papers and the Court declines to do it for them.  On this basis alone, summary judgment as to the individual Defendants should be denied.[10]

Nevertheless, even if Defendants statement of the law was correct, and the individual Defendants could be held derivatively liable for the corporate Defendants,

---

[10] In this regard the Court notes that there is sufficient evidence of operational control to defeat a motion from Defendants Kevin Chen and Cai Fen Chen in any event.

as set forth above, the Court has concluded that there is sufficient evidence to create

a question of material fact as to liability for the corporate Defendants, and so any

derivative claims against the individual Defendants would survive as well.

>    d.  <u>Wage Notice Claims</u>

Finally, Defendants argue that they are entitled to summary judgment as to

Plaintiffs' claims that Defendants failed to provide proper wage notices under the

NYLL.  New York Labor Law § 195(1)(a) provides:

> Every employer shall:
>
> Provide his or her employees, in writing in English and in the language
> identified by each employee as the primary language of such employee, at the
> time of hiring, a notice containing the following information:  the rate of pay
> and basis thereof, whether paid by the hour, shift, day, week salary, piece,
> commission, or other; allowances, if any, claimed as part of the minimum wage,
> including tip, meal, or lodging allowances, the regular pay day designated by
> the employer in accordance with section one hundred ninety-one of this article;
> the name of the employer; any "doing business" as names used by the employer,
> the physical address of the employer's main office or principal place of
> business, and a mailing address if different; the telephone of the employer; plus
> other such information as the commissioner deems material and necessary.

N.Y. Lab. L. § 195(a)(1); *Garcia v. Saigon Market LLC*, 15 CV 9433, 2019 WL

4640260, at *4 & n.9 (S.D.N.Y. Sept. 24, 2019) (noting that prior to February 27, 2015,

this notice had to be provided annually prior to February 1 of each year); *see also*

*Marin v. Apple-Metro, Inc.*, 12 CV 5274, 13 CV 1417, 2017 WL 4950009, at *15-*17

(E.D.N.Y. Oct. 4, 2017) (summarizing history of New York statutory wage notice

requirements).

According to Defendants, their weekly wage statements satisfy section

195(1)(a)'s requirements.  *See* DE [270-6], [270-8], [271-1].  Not true.  Initially, they

lack certain required information, such as the employer's name, doing business name, physical address, mailing address and phone number.  Further, these notices are in English with no corresponding statement in Plaintiffs' preferred language. [11] Moreover, one of Plaintiffs' main contentions is that the statements are all inaccurate and that they are owed the difference between what they were actually paid and the minimum wage, and overtime for hours worked over 40 each week, plus spread of hours pay.  Accordingly, summary judgment as to this cause of action should be denied.

For all of these reasons the Court respectfully recommends that Defendants' motion for summary judgment be denied its entirety with the exception of dismissal of Plaintiff Ru Hao Liu, to which Plaintiffs consent.

## B. Defendants' Motion to Decertify the FLSA Collective Class

Defendants' second motion is to decertify Plaintiff's collective class under the FLSA.  *See* Def. Mem. at 11.[12]  This case was conditionally certified as a collective action by Amended Memorandum & Order dated October 23, 2015.  *See* DE [102]. Defendants' motion to decertify is based on their argument that the named Plaintiffs are not similarly situated to the class members they seek to represent, because they do not have viable claims against HDL, they were never employed by Fenny or Chen's, Plaintiff Cheng was never employed by Wen Mei, Fenny or Chen's, and Plaintiff Lin was never employed by Fenny or Chen's.  In short, because the named

---

[11] The Court notes that if the translators used at depositions as an indication, the notices would have to be in Mandarin or another dialect of Chinese.
[12] Defendants do not move to decertify Plaintiffs' Rule 23 class concerning their New York State law causes of action.

Plaintiffs were not employed by the same corporate entities as all of the class members, they are not similarly situated to those opt-in Plaintiffs that were, and so the class should be decertified.

In adjudicating a motion to decertify after discovery, the Court applies a more "stringent standard" of proof than that applied at the conditional certification stage. *See Damassia v. Duane Reade, Inc.*, 04-cv-8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). The factors district courts typically consider are: (1) whether there are disparate factual and employment settings for the individual plaintiffs; (2) whether Defendants have defenses which vary by plaintiff; and (3) whether fairness and procedural considerations weigh in favor of, or against, class treatment. *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).

The burden to demonstrate that all class members are similarly situated remains with the plaintiffs. *See Ayers v. SGS Control Servs., Inc.*, 03-cv-9078, 2007 WL 646326, at *4 (S.D.N.Y. Feb. 26, 2007). What is required is a "persuasive showing" that the original and opt-in plaintiffs were common victims of a[n] FLSA violation pursuant to a systemically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation." *Pefanis v. Westway Diner, Inc.*, 8-cv-002, 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010). The key is a common "policy, plan or scheme" to violate the FLSA. *Gayle v. Harry's Nurses Registry, Inc.*, 07-cv-4672, 2012 686860, at *5 (E.D.N.Y. Mar. 2, 2012).

Where the records show that all putative class members are "similarly situated," the class moves from conditionally certified to finally certified. *See Calales*

*v. 115 Broadway Corp.*, 09-cv-4674, 2009 WL 3029333, at *2 (S.D.N.Y. Sept. 22, 2009). If the class members are not similarly situated, decertification is appropriate. *Lee*, 236 F.R.D. at 197.

Applying these standards, Defendants' motion to decertify should be denied. First and foremost, the evidence establishes that Plaintiffs were subject to a single set of wage and hour practices by Defendants with respect to how they were paid, allegedly in violation of the FLSA. Defendants do not argue otherwise. Rather, they argue artificially that because the named Plaintiffs were not employed by all the corporate Defendants that the class members were, they are inadequate class representatives because they are not similarly situated to all the opt-ins. For the same reasons addressed reviewing Defendants' motion for summary judgment, this argument is unpersuasive for several reasons.

Initially, Defendants argue that only employment by each of the corporate Defendants is relevant. This is a red herring. Applying the economic realities test demonstrates that regardless of corporate form, Plaintiffs were subject to a single set of employment practices maintained by Kevin Chen and Cai Fen Chen (who may be individually liable) at a single location (with the exception of Chen's down the road), with the same equipment, menus and employees. These practices may have been implemented through different corporate vehicles with different (albeit closely related) nominal owners over time, first with HDL, then Wen Mei, Fenny and finally Chen's, but there is no evidence that they ever changed. Moreover, and as set forth above, there is ample evidence from which a jury could conclude that facts support a

23

finding of successor liability for all of the corporate Defendants.  Finally, Defendants do not argue, and the Court does not anticipate any defenses applicable to, some Plaintiffs, but not others, that would weigh in favor of decertification.  Accordingly, the named Plaintiffs are sufficiently similarly situated to the opt-in Plaintiffs, and all Plaintiffs are sufficiently similarly situated to each other, such that proceeding as a collective action is fair and procedural considerations weigh in favor of representational litigation.  As a result, the Court respectfully recommends that Defendants' motion to decertify the FLSA collective action be denied.

### III.   CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends that Defendants' motions for summary judgment and to decertify the FLSA collective class be denied in their entirety with the exception of the dismissal of Plaintiff Ru Hao Liu on consent.

### IV.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            July 27, 2020

                                    s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge